THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD S. GARD, Plaintiff in Error.

*Opinion filed June 18, 1913.*

1. CONTEMPT—*what constitutes a direct contempt.* Conduct which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect, constitutes a direct contempt and is punishable as such.

2. SAME—*when sufficiency of complaint is not material.* Where acts constituting a direct contempt are committed in the presence of the court an order of commitment may be lawfully made without any preliminary proceeding, and the sufficiency of the complaint in a preliminary proceeding is therefore not material.

3. SAME—*what not a defense to contempt proceeding.* Where a police officer appears in answer to a writ of *habeas corpus* and produces the prisoner in court and answers as the prisoner's custodian, his intentional deception of the court with reference to the matter is punishable as a direct contempt, and it is no defense that the writ of *habeas corpus* was not directed to him but to the chief of police.

4. SAME—*false answer to court's question need not be by audible words.* The fact that the question put by the court to a police officer was not answered by him in audible words but merely by shaking his head, with the intention of conveying a negative answer which he knew was false, does not exempt him from punishment for direct contempt in deceiving the court.

WRIT OF ERROR to the Branch "C" Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

JAMES HARTNETT, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and ARTHUR R. ROY, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

The principal facts in this case are, that prior to November 21, 1910, William Schubert was arrested and detained by the police of the city of Chicago on suspicion of

having robbed a man named Bates. The arrest and deten-
tion were not by virtue of any warrant issued by a court.
On said 21st day of November Schubert applied to the
criminal court, then presided over by Judge Scanlan, for a
writ of *habeas corpus.* The writ was issued, and while it
ran against Leroy T. Steward, general superintendent of
police, the prisoner was, in response to the writ, produced
in open court by plaintiff in error, who at the time orally
stated to the court that Schubert was arrested and detained
without a warrant because he was suspected of the crime
of robbery; that the witness who was depended upon to
identify him was out of the State, but if given time, he
(plaintiff in error) would secure the witness who was ex-
pected to make the identification. Thereupon Judge Scan-
lan continued the hearing to the 23d day of November and
remanded the prisoner. On the 22d day of November the
plaintiff in error made complaint to and caused to be issued
by the municipal court two warrants against Schubert,—
one for vagrancy and one for adultery. He appears to
have given one of these warrants to a police officer named
Loftus and kept the other one in his possession. On the
23d day of November plaintiff in error again produced the
prisoner in court in obedience to the writ of *habeas corpus.*
The witness by whom it was expected to identify Schubert
as having committed the crime of robbery was present but
was unable to identify him. When the identification failed
to be made, Judge Scanlan inquired of plaintiff in error if
he had any other charges against Schubert. Plaintiff in er-
ror answered that he had not, by shaking his head in the
negative. Thereupon an order was made discharging Schu-
bert, and with a copy or memorandum of the order he and
his counsel went to the jail to have the jailer discharge him.
Plaintiff in error preceded them to the jail and there pro-
posed to arrest Schubert under one of the warrants he had
sworn out of the municipal court the day before and which
he had had in his possession ever since it was issued. Upon

being remonstrated with by Schubert's counsel and told that he was guilty of contempt of court in deceiving the court by his answers to the court's inquiries, he was induced to go with counsel for Schubert before the court, where counsel related what had occurred. Affidavits of these matters were prepared and sworn to by Schubert and his counsel, and on the 30th of November the court appointed George W. Miller, a member of the bar of the court but not State's attorney or Attorney General, to represent the People in a proceeding against plaintiff in error for contempt of court. On the same day Miller filed a charge, which is called in the briefs an information, against plaintiff in error for contempt, setting up the facts above stated but more in detail, and a rule was entered requiring plaintiff in error to show cause by December 2 why he should not be adjudged guilty of contempt of court. The hearing was not finally concluded until February 2, 1911, when plaintiff in error was adjudged guilty of contempt and sentenced to sixty days in jail. He thereupon applied to Judge Petit, a circuit judge of Cook county, for a writ of *habeas corpus,* who issued the writ and on the 11th day of February entered an order discharging plaintiff in error from imprisonment under and by virtue of the judgment and order of commitment in the contempt proceeding. An original proceeding was then instituted in this court in the name of the People, upon the relation of the State's attorney, for a writ of *mandamus* against the sheriff of Cook county, commanding him to apprehend plaintiff in error and deliver him to the jailer, to be imprisoned in accordance with the order and judgment of Judge Scanlan in the contempt proceeding. This court held the record showed Judge Scanlan had jurisdiction to render the judgment and order of commitment, that Judge Petit had no jurisdiction in the *habeas corpus* proceeding to order the discharge of plaintiff in error, and that the judgment discharging plaintiff in error was absolutely void.

The writ of *mandamus* was issued as prayed. (*People* v. *Zimmer*, 252 Ill. 9.) Afterwards, plaintiff in error sued a writ of error out of the Appellate Court for the First District to review the judgment of the criminal court in the contempt proceeding. That court affirmed the judgment, and a further writ of error was sued out of this court.

In his brief plaintiff in error attacks both the judgment of the criminal court in the contempt case and the judgment of this court in the *mandamus* case, but as the writ of error only properly brings before us for review the correctness of the judgment of the criminal court, that question, only, will receive our consideration.

It is insisted the criminal court was not legally constituted because the State's attorney was not present. The *placita* in the record recites that he was present.

It is also contended the judgment should be reversed because the complaint was not sworn to and was not filed in the name of and prosecuted by the State's attorney. The contempt of which plaintiff in error was adjudged guilty was committed in the presence of and within the personal knowledge of the court. The complaint so charged and the judgment so recites fully and in detail. The judgment and order of the criminal court in part recites that the court asked plaintiff in error, who was standing within a few feet of him, if he had any other charges against Schubert; that plaintiff in error responded by shaking his head in the negative, meaning and intending the court to understand that he had no further charges or process against the prisoner under which he could or should be held; that the court so understood the action of plaintiff in error and acted accordingly, when, in fact, the latter had the day before caused two warrants to issue from the municipal court for the arrest of Schubert,—one for vagrancy and the other for living with a woman in a state of adultery,—and had one of the warrants in his possession when he made false answer

to the court's inquiry, acting upon which the court discharged Schubert; that plaintiff in error a half hour later, when he appeared before the court at the time Schubert's counsel complained of the intention and attempt of plaintiff in error to arrest Schubert under one or both warrants he had caused to be issued the day before, stated to the court that he had said warrants issued for the purpose of arresting Schubert after his discharge if the court discharged him in the *habeas corpus* proceeding, and that he would have arrested said Schubert had he not been prevented from doing so by Schubert's counsel. Conduct which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect or disregard, constitutes a direct contempt and is punishable as such. (*Dahnke* v. *People,* 168 Ill. 102.) The acts constituting the contempt having been committed in the presence of the court were a direct contempt, and the order of commitment could have been lawfully made without the preliminary proceedings that were had. *Tolman* v. *Jones,* 114 Ill. 147; *State* v. *Frew,* 24 W. Va. 416; *People* v. *Greely,* 12 How. Pr. 14; *Neel* v. *State,* 9 Ark. 529; 50 Am. Dec. 209; 9 Cyc. 19.

It is also argued that as the writ of *habeas corpus* was not directed to plaintiff in error but to the general superintendent of police the court had no jurisdiction to render the judgment. It is a sufficient answer to say that plaintiff in error appeared in answer to the writ, produced the body of the prisoner in court and answered as the prisoner's custodian. It was immaterial to the jurisdiction of the court in the contempt proceeding that plaintiff in error was not named in the writ of *habeas corpus.*

The contention that the judgment is erroneous because it appears that plaintiff in error did not by audible words reply to the court's inquiries but only shook his head, does not deserve serious consideration.

Ample time and opportunity were given plaintiff in error to purge himself of contempt, and in our opinion he failed to do so. We find nothing in the record that would justify a reversal of the judgment, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*