428

The People of the State of Illinois, Defendant in Error, v. Amante Rongetti, Defendant Below. William Scott Stewart, Plaintiff in Error.

Gen. No. 32,770.

Opinion filed December 19, 1928.   Rehearing denied January 2, 1929.

WILLIAM SCOTT STEWART, *pro se.*

ROBERT E. CROWE, State's Attorney, for defendant in error; EDWARD E. WILSON, HENRY T. CHACE, JR., and HENRY E. AYERS, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This writ of error is sued out by one William Scott Stewart, the plaintiff in error, in an effort to reverse the judgment finding him guilty of a contempt of court in the presence of the court during the trial of the case of *People v. Rongetti,* charging the said Rongetti with the crime of murder. The sentence imposed against the said Stewart by the court for such contempt was a committal for the term of three months in the common jail of Cook county. Plaintiff in error appears in this court *pro se* and without the aid of other counsel.

The alleged contempt arose regarding a witness for the State in the *Rongetti* case named Lorraine Irwin.

The prosecution was initiated on March 2, 1928, by the court granting leave to the State's attorney to

file a written motion, which in substance charged that during the trial and in connection with the case, *People· v. Rongetti,* Lorraine Irwin, a material witness for the State in said case, after such witness had been served with a subpoena to appear as a witness in said cause, was called to the bar of the court and questioned and examined by the court concerning her attendance in said court as a witness and certain alleged threats and intimidations towards said witness, in contempt of that court. William Scott Stewart, attorney for the defendant in said cause, well knowing that said Lorraine Irwin was then and there a material witness of the People in said cause under a subpoena of the court, and that the court was in the act of inquiring of said witness concerning said threats and intimidation and to secure the attendance and safety of said Lorraine Irwin as a witness in said case, in the presence of the court advised the said Lorraine Irwin not to answer the questions propounded to her by the court. That the court then inquired of said Stewart if he was the attorney for said Lorraine Irwin, and thereupon, without being theretofore retained by the said Lorraine Irwin or having been appointed by the court to in any way represent her, and without any authority so to do, said Stewart stated that he represented said Lorraine Irwin in said matter before the court and filed his appearance in writing as the attorney for the said Lorraine Irwin. Thereupon the court ordered and directed that said Lorraine Irwin be taken into custody by an officer of the court, for the purpose of securing the attendance of said Lorraine Irwin as a witness, and for the purpose of protecting her from further threats and intimidations. That said Stewart conspired and confederated with other evilly disposed persons to wrongfully sue out of the superior court of Cook county a writ of habeas corpus directing that said Lorraine Irwin be taken out of the custody of the trial court and before the said superior court, and

further charged that while said Lorraine Irwin was in the presence of the superior court said Stewart appeared in said court seeking to release said Lorraine Irwin from the custody of the court, and further while said Lorraine Irwin was in the superior court he, the said Stewart, approached her and made certain threats against her in the event she should testify as a witness for the State in said cause. All of the aforesaid charges tended to embarrass and obstruct the court in the due administration of justice and tended to bring the administration of law and justice into disrepute; and moved that the court deal with said Stewart for the matters in said motion alleged against him.

After a hearing of the charges against said Stewart, set forth in said motion, the court entered an order with certain findings of fact proven upon the said hearing, among which were, *inter alia,* the following:

"And thereupon this court finds that on the 21st day of February, A. D. 1928, said William Scott Stewart as attorney for the said Amante Rongetti was present in open court, and that while this court was in session and while one Lorraine Irwin was then and there under the jurisdiction of this court by virtue of a subpoena commanding her to appear and testify on behalf of the People in the case of the *People of the State of Illinois v. Amante Rongetti* then on trial, he, the said William Scott Stewart, then and there entered his appearance as counsel for said Lorraine Irwin without appointment by the court and without the request or appointment of the said Lorraine Irwin, and the said William Scott Stewart then and there in open court charged the court with coercing the witness, Lorraine Irwin, and advised her, the said Lorraine Irwin, that she did not have to answer the questions of the court and advised her not to answer the questions of the court;

"And the court further finds that in open court on the 23rd day of February, A. D. 1928, the said William

Scott Stewart then and there charged the court with trying to induce the witness, Lorraine Irwin, to say something different from what she had already said, that is to say, to commit perjury;

"And the court further finds that on the 23rd day of March, A. D. 1928, said William Scott Stewart in open court under oath charged this court with attempting to decoy the witness, Lorraine Irwin, into a position that would justify the court in attaching her for contempt;

"All of which said conduct of said William Scott Stewart took place while this court was in open session and tended to impede and interrupt the proceedings and lessen the dignity of this court, and was calculated to impede, embarrass and obstruct this court in the due administration of justice.

"The court further finds that the said William Scott Stewart, who is now here present in open court, is, by reason of said conduct of said William Scott Stewart, guilty of a direct contempt of this court in open court.

"It is therefore considered, ordered and adjudged that said William Scott Stewart because of said judgment of guilty, be and he is hereby sentenced to confinement in the county jail of Cook county, Illinois, for the term of three months," etc.

To all of which said Stewart took an exception and made a motion to vacate the order and sentence, which motion was denied.

In pursuance of the aforesaid order and findings a mittimus for contempt was issued, directed to the sheriff of Cook county, commanding him to execute the sentence of the court upon the said Stewart, said mittimus being issued and signed in the name of the clerk of said criminal court.

Stewart assigns error upon the record for reversal and argues "that the order (heretofore recited) is indefensible and void."

Stewart urges for reversal that his testimony given under oath in answer to the motion filed by the State's attorney took the place of a sworn answer, entitling him to a discharge of the contempt charged under the rule that where an indirect contempt is charged against a person, it must be charged in an information with interrogatories, and rule entered to show cause, and that contempt must be decided on such information and sworn answer of the respondent. While such is the rule in cases of indirect contempt, it has no application to a case of direct contempt committed in open court in the presence of the court and while the court is in session for the transaction of judicial business, and we hold from the findings in the record that the contempt for which Stewart was found guilty was a direct contempt committed in the presence of the court, while it was in session for the transaction of its judicial business, and that the acts of said Stewart constituting such contempt tended to impede and obstruct justice in said court, and that the material findings in said order were within the cognizance and personal knowledge of the presiding judge of the criminal court. While it is true many acts set forth in the court's findings did not occur in the actual presence of the court, yet those acts, which did occur in the presence of the court, which will be hereafter referred to, were all sufficient to justify the court in entering the order adjudging Stewart guilty of a direct contempt of court in the presence of the court.

We shall confine our review to the matters in evidence, to which the court was a witness, and which were given in open court, in arriving at our conclusion of the guilt or innocence of Stewart of the contempt of which he stands convicted. While there is much evidence in the record of matters occurring out of the court room and the hearing of the trial judge, we shall give no heed to them, as they are not pertinent on the question of Stewart's guilt. His case must be meas-

ured and determined on the occurrences which took place in the presence of the trial judge while the court was in session, engaged in transacting the business of the court in a hearing before the court, so far as the same is preserved by the order of court finding Stewart guilty of contempt.

In Stewart's original brief he makes this statement: "We (editorial *we,* we presume) are quite aware that some authorities hold that where an order has been entered by a court of record finding one guilty of direct contempt, the upper court in reviewing that sentence can look only to the order of the court and is bound to take the findings as recorded by the lower court as true, regardless of any objection or difference of opinion as to what the facts actually were."

We understand this to be a correct statement of the rule in this jurisdiction whatever the rule may be elsewhere. The findings of the court import verity and they cannot be disturbed by evidence *de hors* such record. To this rule we are aware of no exception.

It may not be inappropriate at this point to ascertain the state of mind of Stewart towards the trial judge, whether respectful or belligerent, as evidenced by what he has said in his briefs before us when referring to the trial judge. It may aid in penetrating the atmosphere which Stewart created at the hearing.

On page 33 of his original brief Stewart writes, "When such a finding has been spread of record by a trial court with no evidence upon which to base it, can we not be pardoned if we say that it is downright malicious and a despicable example of the effort of the trial judge to use the power of his office against us." Again on page 77, in referring to a finding in the record he states, "But this finding is in keeping with the rest of the reckless ruthless disregard of the truth manifested by the trial court." And on page 87, he charges that "the trial judge exceeded the discretion given him and acted maliciously and his order is unjustifiable and

indefensible." On page 92 occurs this observation aimed at the trial judge, "The trial judge was not elected to be a judge, prosecutor and grand jury but he endeavored to so act nevertheless." Lastly on page 4 of his reply brief, Stewart states, "We do deny the truth of the charge, and we again assert that this order of commitment is nothing more or less than the unlawful usurpation of a power by an arrogant, selfish, tyrannical trial judge for the purpose of venting his spleen and animosity and is indefensible, libelous and void." It must not be overlooked in judging of contemnor's frame of mind that he appears as his own counsel, and that the language in his brief is not that of a retained counsel, over which it might be pleaded in extenuation that he had no control and was therefore not responsible. This may likewise be evidence of the folly of appearing *"pro se."* The briefs referred to are signed "Wm. Scott Stewart, attorney *pro se."*

At the time of the occurrences in question one Lorraine Irwin had been subpoenaed as a witness for the State in the *Rongetti* case, *supra,* and the court was proceeding to interrogate her in open court while she was on the witness stand, and the trial judge was engaged in an effort to find out if the rumors which had come to the ears of the court and the State's attorney, that the witness had been intimidated, were true or not. Stewart was not the attorney for Miss Irwin, nor had he been appointed such by the court. Notwithstanding this, he contended that he was her attorney, in spite of her denials made in his presence while being examined by the court, and interrupted the proceedings without authority so to do, and falsely claiming to be the attorney for Miss Irwin, entered her appearance in writing, now claiming to have done so upon the suggestion of the trial judge. What really occurred was that the trial judge said, "If you are her

attorney, enter her appearance in writing,'' where-upon the minute clerk handed Stewart a blank form of appearance, which he filled out and signed, and then handed it to the clerk. All these acts were in contempt of the court and its authority and tended to interfere with and impede the course of justice. His contention that he was the attorney of Miss Irwin and that he signed an appearance for her as such at the instance of the court were subterfuges and false, all of which Stewart as an experienced criminal court practitioner knew to be mere subterfuges and false pretenses. In so doing he was unduly impeding the orderly conduct of the proceeding in which he unwarrantedly inter-meddled.

While Lorraine Irwin was on the witness stand being interrogated by the court, Stewart interrupted by making this remark to the court, ''Under which your Honor she is entitled to sign her own recogni-zance under the law.'' The court, ''Do you represent her?'' Mr. Stewart, ''Why certainly. I will represent any one that is being coerced.'' As Stewart did not represent Miss Irwin his interference was uncalled for, and particularly the remark imputing to the court that the court was coercing Miss Irwin.

And again, ''The court: I asked you, do you repre-sent her.'' Mr. Stewart, ''Yes, I will represent her for that purpose. She is entitled to sign her own recog-nizance under the law.'' The court, ''Do you repre-sent her?'' Mr. Stewart, ''Yes, I do.'' The court, ''Well, then you file an appearance.'' Mr. Stewart, ''I will file an appearance. Enter my appearance for Lorraine Irwin. She is a citizen and entitled to have protection.''

The court put this question to Stewart, ''And you filed that (referring to his appearance for Miss Irwin) because you say you understood that was the sugges-tion of the court?'' Answer by Stewart, ''That was my understanding.''

The foregoing demonstrates that Stewart's claim that he entered an appearance at the suggestion of the court was simply a subterfuge in an attempt to justify his unlawful and contemptuous interference.

Again Stewart interrupted by saying, "All right. I will represent her here in these high-handed methods; I will enter an appearance, yes." And again Stewart said to the court, "I will advise her that she does not have to answer, your honor." As he did not represent Miss Irwin he had no right to advise her as to anything in the matters about which she was being interrogated by the court.

At a further stage of the proceeding, Mr. Ditchburne said, "May I interrupt at this time, if your Honor please?" Q. "Miss Irwin, is Mr. Stewart now your lawyer?" A. "No." Q. "Have you ever retained him?" A. "No." Q. "Have you consented to have him act as your attorney." A. "No." The court (addressing Stewart), "Did any one ever hire you to act for her?" Mr. Stewart, "I filed my appearance at your suggestion." The court, "I didn't suggest that you file your appearance, but I suggested that if you represented her you had better file an appearance. I know of only two ways for a lawyer to file his appearance and that is, one, by a retainer, and the other by appointment. The court has not appointed you, the witness disclaims that she ever retained you, but at any rate the thing that I want to state at this time is to direct counsel that I will not permit counsel to cross-examine this witness, if it is purposed to cloud or attack her character, in regard to the existence of any colored man." To which Mr. Stewart retorted, "Don't you think that on that subject it would be better to wait until we reached that point, and if the witness is now instructed by the court, she should be given instructions as to all of her rights."

In spite of the foregoing Stewart in his brief says, "We did not claim to be her lawyer at any time nor is any claim made that she ever retained us."

We find from the record and findings in the order of commitment that William Scott Stewart was guilty of a contempt of court in the presence of the court, and that his actions tended to impede and embarrass the administration of justice, and that the conduct of said Stewart in this regard was wilful and without any lawful excuse or paliation.

It was held in *People v. Gard,* 259 Ill. 238, that conduct which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect, constitutes a direct contempt and is punishable as such; and that where acts constituting a direct contempt are committed in the presence of the court an order of commitment may be lawfully made without any preliminary proceeding, and the sufficiency of the complaint in a preliminary proceeding is therefore immaterial.

To a like effect is *Ferriman v. People,* 128 Ill. App. 230. In *People v. Cochrane,* 307 Ill. 126, the court held:

"Any act which is calculated to embarrass, hinder or obstruct the court in the administration of justice or to lessen its authority or dignity is a contempt."

We find that the procedure for contempt against Stewart was according to legal precedent; that the contempt charged was a direct contempt committed in the presence of the court, and that the findings of fact in the record support the conclusions and findings of the court, and that such findings have ample support in the evidence, and constitute a direct contempt of court committed in the presence of the court.

Stewart complains of the severity of the sentence, but his continued attitude of hostility to the presiding judge and his expressed contempt for the court, as

evidenced by his language in his briefs, heretofore set out, do not commend him to clemency. We think the sentence is justified by Stewart's conduct in court and his attitude of disrespect for the court made manifest at the time in the court and continued by his uncalled for slanderous remarks in his briefs before this court, in referring to the presiding judge. He has shown no sort of contrition for his contemptuous conduct and he does no deed meet for repentance. As a matter of fact this court would be justified in striking Stewart's briefs from the files for the scandalous matter therein found, referring disrespectfully to the trial judge. If such conduct can be condoned in a court of review, then the orderly trial of causes, particularly in criminal courts, would be a thing of the past, and henceforth counsel might feel privileged to treat the trial judge with contempt. It is axiomatic that law and order should not only prevail, but be enforced in courts of justice.

We find no error of fact or procedure justifying a reversal of the order committing William Scott Stewart to the common jail of Cook county for a period of three months for his contempt of court, and therefore that order is affirmed.

*Affirmed.*

WILSON and RYNER, JJ., concur.