The People of the State of Illinois, Defendant in Error,
v. Lionel A. Sherwin, Plaintiff in Error.
In re Commitment of Lionel A. Sherwin, Plaintiff in
Error, for Contempt of Court in Case of Minne-
apolis Larabee Flour Company v. Isaac Berger,
in the Municipal Court of Chicago.

Gen. No. 35,849.

Opinion

filed March 29, 1933.

DENEEN, HEALY & LEE, for plaintiff in error; ROY MASSENA and DONALD N. SCHAFFER, of counsel.

JOHN A. SWANSON, State's Attorney, for defendant in error; OTHO S. FASIG and EDWARD E. WILSON, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

This proceeding is a writ of error to reverse an order of the municipal court of Chicago finding the defendant Sherwin guilty of contempt of court and committing him to the county jail for a period of 90 days. The contempt was based on the preparation and presentation of a certain bill of exceptions by the defendant which was claimed to be false and so falsified in order to obtain a reversal of the cause out of which the contempt grew.

The order of commitment recites that Sherwin appeared before Judge Jonas on behalf of the defendant in a certain cause in the municipal court, known as *Minneapolis Larabee Flour Mills v. Isaac Berger,* Number 2042211; that said cause came on for hearing November 9, 1931, before the court and jury, resulting in a verdict in favor of the plaintiff and judgment on the verdict. A motion for a new trial was overruled and an appeal allowed upon the filing of a bond and bill of exceptions within 60 days; that Sherwin, intending to deceive the court, falsely, knowingly and contemptuously presented in court a bill of exceptions which was untrue and known by him so to be. The order then sets out in detail a great many matters contained in the transcript of the testimony in the bill of exceptions which the court found to be false and as many more in the instructions.

The court before entering the commitment order called as witnesses the court reporters representing both the plaintiff and the defendant. Sherwin was in court and represented by counsel. The stenographic reports of the trial of the cause, *Minneapolis Larabee Flour Mills v. Isaac Berger,* were then read. There was a wide discrepancy between the notes of the stenographers for the plaintiff and the defendant, both as to the evidence and the instructions. The difference was so glaring that it is inconceivable that it could have been a matter of pure accident. The court during the contempt proceeding stated that it had an independent recollection of the instructions given and that he knew they were incorrect and untrue as they appeared in the bill of exceptions tendered in the original cause. The court expressed the opinion that the defendant Sherwin and the court reporters who took the testimony for Sherwin's client were equally culpable. Two court stenographers took the testimony of the original proceeding on behalf of the plaintiff and both were experienced in their calling and had been actively engaged

in the business of court reporting for a number of years. The notes of each of these differed very materially on substantially important issues from the notes of the stenographer representing Sherwin's client. There may have been some question as to which of the stenographer's notes were correct, but where there was such a material variance as there was in this case between the notes of the court reporter for Sherwin and the notes of both of the other reporters, the court could and did naturally place no reliance on the notes of Sherwin's reporter, and placed the responsibility on Sherwin for presenting the bill of exceptions as a true and correct transcript of the record. In view of all the circumstances, we are of the opinion that the greatest credence should be given the testimony as shown by the stenographic notes of the reporters for the plaintiff in the original action. The number of variances occurring amounted to over 17 and of these a great number were material to the issues in the case and subject to a reversal, if true. The court in its order found this to be a fact based both on the testimony before him and on his own personal recollection. The order sets out in detail both the true and the false testimony. When Sherwin presented this bill of exceptions to the court he knew, or he should have known, of these glaring errors in the bill of exceptions. If he knew, then he was guilty of an attempted fraud upon the court; and if he did not know, he was guilty of such gross negligence as would indicate a complete disregard of the duty he owed, as counsel, to the court before whom he tried the cause.

It is insisted that the court on its own motion can only punish for a direct contempt, namely, one that happens in its presence and of which it has knowledge and judicial cognizance; that otherwise it should be upon an information with leave to answer. Moreover, it is insisted that the court cannot punish for false testimony before it unless the court knows the testi-

mony to be false of its own knowledge. There is a further rule recognized in contempt proceedings, namely, that one whose conduct tends to bring the authority and administration of the law into disrespect or disregard or which tends to hinder or obstruct justice, is such conduct as will amount to a contempt of court. *Dahnke v. People,* 168 Ill. 102; *People v. Gard,* 259 Ill. 238. This may be a direct contempt and we do not believe that the fact that the court considered extraneous evidence necessarily constitutes it one of an indirect contempt which would require the filing of an information. If the defendant Sherwin tendered a bill of exceptions to the court with the intention of deceiving the court and obtaining a reversal, it would be a direct contempt in our opinion and punishable as such. *People v. Gard, supra.* The court had the right to verify its own knowledge by the evidence of witnesses, but the contempt still remains a direct contempt inasmuch as the bill of exceptions was presented to the court with the intention to deceive.

It is insisted that the filing of the bill of exceptions is a merely clerical matter and when marked ''presented,'' the court was not acting in a judicial capacity. The main question still remains, however, viz., whether the purpose was to deceive the court and to impede and obstruct the due course of administrative justice. A very similar case is found in *United States v. Ford,* 9 F. (2d) 990. In that case a bill of exceptions was presented to the trial court in which there were a number of statements of fact which were not true. The court heard evidence and found that such matters were in fact untrue. The court in its opinion, says:

''(2) Moreover, lack of actual knowledge does not constitute a defense, but only an extenuating circumstance in mitigation. It is counsel's duty to know the contents of documents he presents for action by the court, and presentation is a representation that this duty has been performed. It is presumed he knows. It is also counsel's duty to knowingly present none

but documents true in their statement of facts, and therein again presentation is a representation of this duty performed—that counsel believes the facts to be true, and that in so far as they purport to relate counsel's acts they are true. . . .

"(4, 5)  So, too, of lack of evil intent. In contempt, as in many varieties of crime, not always needs there be an evil quality of the mind. It suffices if the latter's equivalent appears in forgetfulness, neglect, or failure of or indifference to duty or consequences. In any event, there is that much in this case.

"(6)  Little need be said to emphasize that the administration of justice depends upon the integrity of judicial proceedings and records. Falsification of either obstructs and defeats justice. In consequence, if falsification be done or attempted intentionally in fact or equivalent as aforesaid, it is contempt of the authority of the court, and usually also a crime. Done by an attorney of the court, it is more reprehensible than by others; for it is an abuse of his office, a betrayal of his trust, a violation of his oath, infidelity to the court to which, and not to his client, is counsel's first duty always, and a profanation of the temple of justice. All this is conceded here as everywhere."

The power of a court to protect itself by its authority to punish for contempt should not be so hedged in by legal refinements as to render it ineffective. We believe this power is well defined in the opinion of the court in the case of *Dahnke v. People,* 168 Ill. 102, in which the statement is made:

"It has been said, that the power of the court in the matter of contempt cannot be defined within any limits, and that the primary question in all cases of alleged contempt is, 'whether there has or has not been an interference or an attempt to interfere with the due administration of justice.' "

It is insisted on behalf of the defendant that as this is a criminal contempt it is necessary that the order

affirmatively show that he, the defendant, was present in court when the order was entered, citing *People v. Bain*, 268 Ill. App. 192. In our opinion the judgment order of the court contains a sufficient recital showing the presence of the defendant. Moreover, the fact that he was present at the time is borne out by the record. We agree with the proposition that the defendant must be in court at the time the commitment is entered.

The Supreme Court in the case of *People v. Moran*, 342 Ill. 478, in its opinion, says:

"Of course, the law is well settled that *the record* shall affirmatively show the defendant was present in court when sentence was imposed if there is any corporal punishment administered."

The order of commitment provides "that the body of said Lionel A. Sherwin be taken from the bar of the said court to the common jail of Cook County." The record shows that immediately upon the entry of the order, the defendant Sherwin was taken into custody by the bailiff of said court in open court. The record imports verity. *People v. Washington*, 342 Ill. 350. The record also shows that during the course of the proceedings the defendant was present in person and represented by counsel. From the record it is obvious that if the defendant was present at the time the order was entered, this fact, appearing as it does, is sufficient to support the order.

Respect for courts should be strengthened rather than weakened. This cannot be accomplished if contempt proceedings are surrounded by technicalities which render the power of the court ineffective. Too many refinements in the law of contempt, while it aids the culprit, often tends to lessen the respect for the court. The rule that full faith and credit should be given to the judgment of trial courts does not appear to be extended to its orders in contempt proceedings. It is true that such a contempt may carry with it a jail sentence, but it is also true that courts are loath to

send individuals to jail for contempt and rarely do so unless in their opinion such a result is inescapable. Moreover, there are often many things which enter into a contempt proceeding which cannot always be reduced to an exact replica of what transpired, and set out in detail within the confines of a court order. Courts should require that practicing attorneys have a higher regard for the administration of justice than that which is required of the layman. Utter disregard of attorneys as to the truth or falsity of matters contained in papers and documents presented to courts should be condemned as unethical and contemptuous. Such we believe was the conduct of the defendant Sherwin in presenting to the trial court the bill of exceptions of the kind and character as was that presented in the case at bar.

For the reasons stated in this opinion the order of the municipal court is affirmed.

*Order affirmed.*

HEBEL and HALL, JJ., concur.