(No. 21432.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* LIONEL A. SHERWIN, Respondent.

*Opinion filed October 27, 1936.*

F. HOWARD ELDRIDGE, (HERMAN L. ELLSWORTH, of counsel,) for relator.

DENEEN, HEALY & LEE, and JAMES J. BARBOUR, (ROY MASSENA, and DONALD N. SCHAFFER, of counsel,) for respondent.

Per CURIAM: An information was filed in this court charging unprofessional and dishonorable conduct on the part of respondent, an attorney at law, and praying that he be disbarred. In response to the rule to answer, respondent filed what he designated demurrers and pleas to the information. To these relator filed a motion to make the rule absolute on the information and the so-called demurrers and pleas. It was announced at a former term of this court that respondent's so-called demurrers and pleas would be treated as an answer to the information and relator's motion as a demurrer to such answer. On the issues thus submitted we rendered an opinion making the rule absolute. Thereafter, on respondent's motion, a rehearing was allowed. He was permitted to answer, and the cause was referred to a commissioner to take proofs on the issues of fact. Relator offered no testimony in chief. Respondent presented his evidence, and, except for two witnesses and exhibits under specification 2 and one exhibit under specification 4, relator offered no evidence in rebuttal. The commissioner's report recommends respondent's suspension from practice for one year. Respondent's exceptions to the report were overruled by the commissioner. Relator filed no objection to the report, and the cause comes on for hearing on the exceptions to the commissioner's report.

The information contains five specifications. The first charged that the respondent was an attorney in the case of William Krug & Sons *vs.* Johnson *et al.,* in the Appellate Court for the First District; that the judgment was reversed and the cause remanded for another trial; that the Appellate Court stated in its opinion that respondent, as counsel for appellee, had unblushingly admitted taking unwarranted and illegal liberties with the transcript; that he had admitted making changes therein without authority of

the court; that the court could not and would not go through the transcript to restore it to its original condition, and that by the action of respondent the whole record had become discredited. Respondent's answer and the testimony disclose that he procured a judgment for Krug & Sons against Johnson, from which the latter appealed to the Appellate Court. Certain original exhibits attached to the transcript when it was approved by the trial judge were removed and false typewritten copies were substituted. After the transcript was filed in the Appellate Court respondent discovered the substitution and found the original exhibits in the office of the clerk of the trial court; that he did not then have much experience in appellate procedure, and without any wrongful intent attached the original exhibits to the false copies; that the transcript was not otherwise altered by him, and that he called the attention of the court to his action by an additional abstract and also by his brief. Certain pen-and-ink changes appeared in the transcript, with which he had nothing to do. The Appellate Court was advised of the facts by his affidavit but declined to investigate the matter. Respondent notified Johnson's attorney of his intention to file a complaint in the matter with the Chicago Bar Association. On the same day Johnson came with his attorney and appellee to respondent's office. Johnson paid Krug the amount of the judgment and his attorney signed a stipulation dismissing the suit. He also satisfied the costs in the Appellate Court. Johnson later made an affidavit which stated that his attorney had induced him to sign an affidavit in the case without reading it; that the affidavit was false; that his attorney advised him to make every effort to settle, as there would be a lot of trouble over something, and that said attorney made the pen-and-ink changes in the transcript. Respondent offered to prove that he unsuccessfully attempted to have the whole matter investigated by relator, but the commissioner sustained an objection to the offer. In March, 1922, respond-

ent wrote the presiding justice of the Appellate Court detailing the transactions and asking that some action be taken to modify or expunge the opinion. In reply the presiding justice stated it was impossible after the long lapse of time, and particularly as the judge who wrote the opinion was no longer a member of the court. The commissioner's report finds that respondent made no alteration in the transcript except as admitted by him, but that his admitted conduct was unprofessional and unethical.

The second specification charges that on April 21, 1925, Judge Torrison, of the circuit court of Cook county, entered an order making certain findings of fact with reference to respondent's conduct in the case of Toth *vs.* Brown *et al.,* then pending in that court. The finding is, in substance, that a default judgment had been opened on motion of the defendants, represented by respondent; that after filing the motion to set aside the judgment, with proof of notice and exhibits attached, respondent took the same from the clerk's office, removed the second page and substituted another in its stead; that such substitution constituted a fraudulent and corrupt alteration of public records; that a bill of sale attached to the motion appeared to have been altered and the note upon which the judgment was confessed had been altered prior to the entry of the judgment, but the court was unable to determine who altered them; that the court was bound by respondent's sworn answer denying the making or knowledge of the alterations, and the rule was discharged. The court, however, struck the motion and exhibits from the files and re-instated the judgment. The testimony on this specification is voluminous. Relator offered no proof except on minor issues and chose to stand on Judge Torrison's order. Respondent denied the alleged substitution or the alteration of either document. He is corroborated by his former stenographer. The evidence tends to show that the matter alleged to have been added to the bill of sale was written on another typewriter

but prior to its execution. It also tends to show that the alteration of the note was made on the typewriter in the office of plaintiff's counsel. The commissioner found that the order of Judge Torrison is not binding upon respondent in this proceeding, and that relator failed to prove the charges in the second specification. The report, however, finds that respondent's conduct did not reflect credit upon the profession, and that juggling of court files and the constant engaging in controversies with lawyers and judges is foreign to reputable and honorable lawyers.

The ground of the third specification is, that Judge Fisher, of the circuit court of Cook county, entered an order finding respondent guilty of direct contempt in that court by reason of matters set up in a petition to expunge all of the order of Judge Torrison except the last paragraph in the case of Toth *vs.* Brown. This is the same case referred to in specification 2. The order sets out the petition, which charges Judge Torrison had shown a vindictive and hostile spirit toward respondent, and refers to other cases in which it is alleged that he showed hostility toward respondent; that Judge Torrison refused to follow the law and found against him with the sole aim and purpose of humiliating him and blasting his reputation. The petition prays that the "so-called order, judgment or decree, or whatever it may be called," be expunged because contrary to law and the result of hatred and vindictiveness of Judge Torrison toward respondent. Judge Fisher found that the language of the petition seriously reflected on the honesty and integrity of the court, found respondent guilty of contempt, fined him $300 and committed him to the county jail in default of payment. This specification also states the fact that Judge Fisher's order was affirmed by the Appellate Court and this court on successive writs of error. (*People* v. *Sherwin,* 334 Ill. 609.) Respondent's answer to this specification, and his testimony, are, that after the petition was filed he realized that the language referring

to Judge Torrison was improper and ill-advised; that prior to the time the petition was read by Judge Fisher he prepared another petition which he asked leave to substitute and expressed his regret to Judge Fisher, but the leave was denied, and that he has ever since regretted making the charges against Judge Torrison. The commissioner found that respondent's claim that the petition was filed in a moment of temper reflects a poor regard for the judgment of this court; that the attack on Judge Torrison was well thought out and deliberately planned, and that respondent was guilty of professional misconduct.

Specification 4 calls to the attention of this court a criticism appearing in the opinion of the Appellate Court on the hearing to review the judgment of Judge Fisher finding respondent guilty of contempt. The opinion states that by reason of ·paraphrasing and deletion of opinions which respondent pretended to quote it was impossible to have confidence in his brief. To this specification respondent answered, and testified that during this time he was suffering from a nervous breakdown which began the day Judge Torrison's order was entered; that he was not in court when Judge Fisher's order was entered; that he knew a writ of error was filed but did not file it himself; that he did not prepare or file any brief or abstract but they were prepared by a lawyer clerk associated with his office, brought there by his law partner, and that he never saw the brief; that he was in the office very little, and was quarantined three weeks on account of his child's illness with scarlet fever; that he went to England on the order of his physician shortly after Easter and remained there until some time in October. The commissioner found that respondent offered no proof that he took any step to procure an extension of time for filing his brief, due to his illness or absence, and that it was his duty to know the contents of briefs presented on his behalf, but that relator has failed to sustain the charge by the character of proof required to justify a legal conclusion of guilt.

Under the fifth specification it is charged that in the case of Minneapolis Larabee Flour Mills *vs.* Isaac Berger, in the municipal court of Chicago, Judge Jonas entered an order finding that respondent falsely, wickedly and contemptuously presented to the court while it was in session a false draft of a bill of exceptions. The order sets out seventeen particulars in which the court finds the bill false, and respondent was sentenced to confinement in the county jail for ninety days. This order was affirmed by the Appellate Court (*People* v. *Sherwin,* 270 Ill. App. 100,) but was reversed without remanding by this court. (*People* v. *Sherwin,* 353 Ill. 525.) The ground of reversal was that respondent had been deprived of his liberty without any formal charge preferred against him and upon hearings to which he was not summoned to appear. The commissioner's report refers to the holding of this court, and finds that relator failed to substantiate the charges in this specification. The report states that while any one of the specifications, standing alone, would not be sufficient to warrant respondent's disbarment, yet all the testimony and exhibits denote a lack of moral character, and concludes that respondent has been guilty of unprofessional conduct.

Briefly summarized, the record shows respondent made no alterations of the transcript as set forth in the first specification except those openly and freely admitted by him, due to his inexperience but with an honest motive. Under the second specification the evidence is not sufficient to prove that respondent substituted a sheet of the motion in that case or that he altered any exhibit. It tends to show that he did not alter either the note or the bill of sale. The charge in the third specification is not denied. In mitigation, respondent urges his effort to withdraw the petition and his regret for his action. Under the fourth specification the evidence shows that due to illness and absence respondent had no knowledge of the wrongful paraphrasing and deletion of pretended quotations in the brief filed in his

behalf. While that is true, he was not a client of the clerk who prepared the brief and it was his duty to know what was being done in his name. While relator has failed to establish the charge by the character of proof required to justify a legal conclusion of guilt, respondent is not blameless in the matter. By his carelessness he tacitly sanctioned an attempt to impose upon the court in a proceeding involving his own interests as a lawyer.

Under the fifth specification respondent does not rest upon our holding that he was not accorded a legal hearing in the contempt proceeding but introduced testimony on the merits before the commissioner. The relator offered no evidence to substantiate the charge. In our consideration of the matter in the contempt proceeding we said: "The bill of exceptions may have been false, but that is only part of the offense. It is equally a part, and perhaps the more important part, of the offense that the false bill of exceptions should have been known by plaintiff in error to be false and presented by him for the purpose of entrapping the court. It is conceivable that the bill of exceptions might have been false in a great many particulars if prepared in the usual course by a court reporter, but it does not by any means follow either that the plaintiff in error knew it to be false, or that, knowing it to be false, he presented it to the court for the purpose of entrapping it. It is possible that the plaintiff in error may have known that the bill of exceptions contained error and yet have presented it to preserve his rights, well knowing that opposing counsel and himself would have an opportunity to make the necessary corrections before its final signing and sealing. This was a point upon which plaintiff in error was entitled to be heard on a formal charge." The testimony before the commissioner tends to show that respondent was not to blame for any errors in the transcript. The commissioner correctly found that relator failed to prove the charge under that specification.

The information also charges respondent with violating certain canons of ethics adopted by the American, the Illinois, and the Chicago Bar Associations. Canon 1 is: "It is the duty of the lawyer to maintain towards the court a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. * * * Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievance to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected."

The charges against Judge Torrison were made in 1925, but this court will not refuse to hear charges against an attorney because of the expiration of some period of time unless it would be unjust or unfair to compel him to answer such charges. (*People* v. *Hooper*, 218 Ill. 313.) Respondent's expression of regret is, of course, commendable, and in this proceeding we think it may be considered in mitigation of the offense. Any punishment under the first specification would be manifestly unjust.

The twenty-second canon of ethics is: "The conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness. It is not candid or fair for the lawyer knowingly to misquote the contents of a paper, the testimony of a witness, the language or the argument of opposing counsel, or the language of a decision or text book," etc. While the record does not show respondent was guilty of personally violating this canon, he neglected his duty to see that it was not done in his behalf. The circumstances excite sympathy for his situation at that time, but we cannot approve his course.

Respondent was born in England in 1879, received his preliminary education in the schools of that country, studied at Oxford and University College and served in the Boer War. Upon his return he studied law at Lincoln's Field

Inn and in the offices of two English barristers. He came to this country in 1902, became naturalized, studied law with Judge Dibbel, of the Minnesota Supreme Court, and completed his education at Northwestern University. After his admission to the bar in this State he enlisted in the World War, leaving a lucrative practice. During his military service his family sojourned in England, his wife being a native of that country. So far as the record shows he has never been charged with over-reaching or defrauding a client. It is difficult to conceive how a lawyer with such a background could be engaged in so many controversies in which his integrity has been attacked. It is the duty of a lawyer to so conduct and guard his activities as a member of a most honorable profession that he will not be repeatedly open to assaults upon his honor. It is, of course, true that a lawyer of the highest integrity may be undeservedly assailed in good faith or under corrupt motives. In either case it is his duty to safeguard his reputation, and a failure to do so in repeated instances raises a suspicion of unfitness and tends to discredit the profession.

This court has long recognized the duty imposed upon it to guard and maintain the high order of integrity of the legal profession by striking from the rolls the names of attorneys who indulge in practices designed to bring the courts or the profession into disrepute, or to perpetrate a fraud upon the courts, or to corrupt and defeat the administration of justice. (*People* v. *Metzen,* 291 Ill. 55; *People* v. *Hooper, supra; People* v. *Pickler,* 186 Ill. 64.) The record in this case does not justify disbarring respondent. On the other hand, it does not justify his total exoneration. By his repeated controversies with courts he has placed himself under a suspicion of misconduct. Our conclusion is that the record shows he deserves to be censured for the reasons stated, and it is accordingly so ordered.

*Respondent censured.*