**The People of the State of Illinois, Defendant in Error, v. Gustave Anderson, Plaintiff in Error.**

**Gen. No. 39,780.**

Opinion
filed March 11, 1938.

BENJAMIN C. BACHRACH and FRANK J. FERLIC, both of Chicago, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDW. E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

By this writ of error defendant, Gustave Anderson, seeks to reverse the judgment entered by Honorable Robert C. O'Connell, one of the judges of the criminal court of Cook county, finding him guilty of a direct contempt of said court and sentencing him to imprisonment in the county jail of Cook county for a period of one year.

The order of commitment recites that November 20, 1936, in the course of obtaining a jury in the criminal court of Cook county in an embezzlement case [*People*

*v. Zintak*], Gustave Anderson was examined under oath by counsel for the defendant in that cause as to his qualifications to serve as a juror. In responding to counsel's statement, "You are to sit there as a fair and impartial umpire between both sides" he answered, "Yes, sir." He was asked, "I will put it to you this way; suppose we were exchanging positions and you were defending somebody you were interested in, would you be satisfied to have twelve men in the jury box in the same frame of mind that you are in now and feel that both sides would get a fair deal?" and he answered, "I would, yes." In response to counsel's statement, "You understand we don't want any of the best of it or any of the worst of it" he answered, "Not the best or the worst." He was asked, "You think you could give us a square deal here, both sides?" and he answered, "Yes, sir, I could." He was accepted and sworn as a juror. That case having been submitted to the jury, it reported after 41 hours of deliberation that it was unable to agree upon a verdict. The jury was discharged and a mistrial ordered.

The order recites further that March 26, 1937, Gustave Anderson voluntarily appeared in the same court before the same judge and in response to said Anderson's request he was sworn and said in open court within the presence and hearing of Honorable Robert C. O'Connell and to the personal knowledge of said judge that November 18, 1936, "while he was eating his supper in a restaurant called Eddy's Restaurant, located at 59th Street and Wentworth Avenue, Chicago, Illinois, two doors south of the corner, Robert McKinlay, a friend of his, and an acquaintance of forty years and a former school chum of said Gustave Anderson, entered the restaurant and said to him, that he knew of his being on the Criminal Court jury, and that he knew that he would be called as a prospective juryman on the Zintak case; and that he wanted him to qualify

112

as a juror in the Zintak case and to vote and hold out for a not guilty verdict; and that if he would do that he would be well taken care of by both Frank Zintak and Robert McKinlay; that he, Gustave Anderson, would receive a position that would pay $7.00 or $7.50 per day for a period of four years; that McKinlay said that he should do this for the consideration he was offering and as well as their old friendship; and that he, Anderson, agreed to do as McKinlay asked him.''

The order also recites that Anderson on March 26, 1937, in the same court and under the aforementioned circumstances went on to say that being sworn to answer questions as to his qualifications to serve as a juror in the aforesaid Zintak case, he made the answers heretofore set forth to the questions asked by defendant's counsel; that he made such answers so that he would be accepted and permitted to serve on the jury ''to carry into effect his agreement with Robert McKinlay and vote not guilty''; that he did not participate in the discussion carried on by the jurors in the jury room, ''but remained silent and voted not guilty each time a ballot was taken pursuant to said agreement with Robert McKinlay''; that after he had been discharged from jury service his repeated requests that McKinlay secure the employment he had promised him in return for his agreement to vote not guilty as a juror in the Zintak case went unheeded and he finally became convinced that he had been ''double-crossed''; and that he ''felt that he was no longer bound to keep silent regarding his agreement to vote not guilty, and that he felt free to seek what redress he could for the wrong that had been done him in the failure of Robert McKinlay to keep his agreement to give him four years of employment at $7 or $7.50 per day for voting not guilty in the aforesaid case.''

The principal contentions urged by the contemnor for the reversal of the judgment in the instant case

were made and fully answered in the recent case of .
*People v. Berof,* 367 Ill. 454, where the Supreme Court
said at pp. 455–457:

"The order of commitment recites that on Septem-
ber 13, 1936, the defendant offered himself in open
court as a surety for the later appearance of one Louis
Swinberg, and then made certain representations as
to his financial standing and other pertinent facts; that,
in open court, on examination by the court, he repre-
sented himself to be worth more than $1,000 over and
above all his liabilities; further, that he was in the
fruit and vegetable business and that he knew that
the defendant Swinburg had no criminal record. The
order further recites that the defendant thereafter ad-
mitted, in open court, that all of these representations
and statements of fact were false. The court sum-
marily, and without notice or citation, adjudged him
guilty of a direct contempt and imposed the sentence
above referred to.

"The defendant seeks, and claims to have found,
some uncertainty in the law of contempt where none,
in fact, exists. He relies upon the ancient and long
accepted statement by Blackstone, as follows: 'If the
contempt be committed in the face of the court, the
offender may be instantly apprehended and impris-
oned, at the discretion of the judges, without any fur-
ther proof or examination. But in matters that arise
at a distance, and of which the court cannot have so
perfect a knowledge, unless by the confession of the
party or the testimony of others, if the judges upon
affidavit see sufficient ground to suspect that a con-
tempt has been committed, they either make a rule on
the suspected party to show cause why an attachment
should not issue against him, or, in very flagrant in-
stances of contempt, the attachment issues in the first
instance, as it also does if no sufficient cause is shown
to discharge; and thereupon the court confirms and

makes absolute the original rule.' (4 Blackstone's Com. 286.) This. rule has been approved by the Supreme Court of the United States in *Ex parte Terry,* 128 U. S. 289, *Ex parte Savin,* 131 U. S. 267, *Cooke v. United States,* 267 U. S. 518, and many other cases. In our own court, (*People v. Sherwin,* 353 Ill. 525,) we have said: 'It has long been established by the decisions of this and of other courts that a criminal contempt which is direct in its nature—i. e., which takes place in the very presence of the judge, making all of the elements of the offense matters within his own personal observation and knowledge, or which occurred out of his presence, if admitted by the contemnor in open court—may be punished summarily by the court without any formality of pleading, notice or answer.'

''The plaintiff in error attempts to argue that the present case is not one of direct contempt because, as he says, the court did not know at the time the false statements were made that they were false and that the court, therefore, had to depend on additional evidence heard at a later time. This is an effort to confuse the last part of Blackstone's rule with the first part of it. The case before us clearly falls within the first part of the rule in which the contempt is committed in the very face of the court. The judgment is based upon matters which took place in the presence of the court and of which the court had direct personal knowledge without the hearing of any extraneous evidence whatever. The fact that some days intervened between the making of the false statements and the admission of their falsity is of no importance. Both acts occurred in the presence of the court and were calculated, and of such a character, as to impede the administration of justice. Had they occurred at a different place, or had the admission of falsity been made at a different place, so that the judge would have to hear evidence on the matter, the second part of the rule would come into operation, but it has no applica-

tion to the facts before us. There is no occasion to consider such a state of facts nor to discuss those cases in which a citation has been issued and served.

"A distinction between the first and the second parts of Blackstone's rule eliminates all difficulty in the present case. That distinction, which has been recognized by so many courts for so long a time may be stated simply and is to this effect: When all of the facts and the proof of them occur before the court so that the judge has full knowledge of every element of the contempt, without depending on evidence of other facts, the punishment may be summary and without notice or citation; when the contempt is not thus apparent and its demonstration depends on the proof of facts of which the court would have no judicial notice, due process requires a citation in order that the defendant may disprove or obviate the *extra curia* facts."

It will be noted that the false statements were made by Anderson November 20, 1936, and the attachment for contempt for perjury was issued and served on him March 26, 1937, the date on which he admitted in open court the falsity of his answers as a prospective juror in the Zintak case. It is insisted that contempt by perjury cannot be made the basis of a judgment for direct contempt because the time intervening between the commission of the contempt and the institution of the contempt proceeding was unreasonable. All the contemptuous acts and proof of them occurred here as in the *Berof* case "before the court so that the judge has full knowledge of every element of contempt, without depending on the evidence of other facts," and the fact that about four months intervened "between the making of the false statements and the admission of their falsity is of no importance."

It is contended also that since Anderson's admission of his perjury in the Zintak case was neither made in that case nor in a court proceeding in which he was on

trial himself, it did not constitute a "judicial confession," and being no more than an "extra-judicial confession," it was insufficient to prove the *corpus delicti*." There is no merit in this contention. A contempt proceeding is *sui generis* and the rule of evidence as to proof of the *corpus delicti* in a criminal case is inapplicable. It can make no difference whether we characterize Anderson's statement in open court that he deliberately perjured himself in the Zintak case as a judicial confession or a judicial admission. It was absolute proof of the facts admitted. It is idle to say that because his admission was not made in the Zintak case or in a proceeding against the contemnor himself that such admission was insufficient to justify his summary commitment for direct contempt. Prior to his admission there was no basis for a contempt proceeding against him. Since the court had no knowledge of his perjury, it was only as a result of such admission that the court ordered the attachment for contempt for perjury to issue. In *People v. Hadesman*, 223 Ill. App. 219, where the facts were almost identical, this court said at pp. 222, 223:

"The contemptuous conduct consisted of perjury by means of which the defendant became a juror in the actual trial of a murder case in the criminal court of Cook county. It is obvious from what appears in the judgment of the trial judge that the particular answers of the defendant were false when made; that at that time he knew they were false and made them with the criminal intention of becoming a member of the jury when he was ineligible, thus interfering with the proper procedure of the court and the due administration of justice. Unlike the case of *People v. Hille*, 192 Ill. App. 139, where the court said that: 'The record does not show that the plaintiff in error admitted that he knew that the representations made by him were false at the time he made them.' Here, in the instant case, the defendant in answering the questions of the trial

judge showed that he must have known that the answers that he gave when interrogated as to his qualification and fitness in the *Savano* case were false when made. It is the law that conduct, in the presence of the court, which tends directly to obstruct and prevent the administration of justice in the conventional way and according to the requirements of the constitution and the statutes is a direct contempt and punishable as such. *People v. Gard,* 259 Ill. 238. In the latter case the court said: 'Conduct which tends to embarrass or obstruct the court in the administration of justice, or which tends to bring the administration of the law into disrespect or disregard, constitutes a direct contempt and is punishable as such.' And, further, having in mind the question as to whether the particular acts constituted a direct contempt: 'The acts constituting the contempt having been committed in the presence of the court were a direct contempt, and the order of commitment could have been lawfully made without the preliminary proceedings that were had.' *People v. Oesterreicher,* 214 Ill. App. 643.

"It is contended by counsel for the defendant that the trial judge did not have the authority to enter an order of commitment without certain preliminary proceedings whereby the defendant might have the opportunity to purge himself of the alleged contempt. That contention, however, bearing in mind what is said in the *Gard* case, *supra,* that in case of a direct contempt an order of commitment may be entered without preliminary proceedings, is untenable. As the trial judge stated, when the matter was being discussed with counsel, his judgment was predicated entirely on what actually occurred in his presence and that of the court."

The defendant was guilty of a wilful and direct criminal contempt and the judgment of the criminal court is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.