THE PEOPLE *ex rel.* John J. Healy, State's Attorney,

*v.*

JAMES H. HOOPER.

*Opinion filed October 24, 1905—Rehearing denied Dec. 14, 1905.*

1. DISBARMENT—*using remedies and processes of law for fraudulent purpose warrants disbarment.* Dismissing a justice of the peace suit for the purpose of inducing the defendants to believe it had been dropped, and afterward taking an appeal, obtaining judgment by default and causing execution to be levied upon real estate, all without notice to defendants and for the fraudulent purpose of getting title to the real estate, is ground for disbarring an attorney.

2. SAME—*deceiving court into entering judgment by default is a ground for disbarment.* Deceiving the court into entering judgment by default, although the attorney inducing such course knows that there is on file and in his possession a motion by the defendant, under special appearance, to quash the service of summons, which motion is accompanied by an affidavit denying that the person served was an agent of defendant, is ground for disbarment.

3. SAME—*abstracting documents from files is a ground for disbarment.* An attorney who abstracts documents and papers from the files in furtherance of or in attempted concealment of his fraudulent acts should be disbarred.

4. SAME—*procuring false transcript of record to be certified is a ground for disbarment.* Procuring the clerk of the court to sign and certify a transcript of the record in which the attorney has deceitfully incorporated certified copies of a decree in another case, and of certain other documents, as having been offered in evidence before the master and excluded by him when they were not, in fact, offered in evidence, is ground for disbarment.

5. SAME—*Statute of Limitations does not bar delinquencies in an attorney's conduct.* A proceeding to disbar an attorney is not barred in express terms by the Statute of Limitations, nor will the court establish a limitation by analogy to the statute unless the particular circumstances of the case render it unjust and unfair to require the attorney to answer as to such occurrences.

INFORMATION for disbarment.

JOHN J. HEALY, State's Attorney, (C. E. MORE, and JOHN L. FOGLE, of counsel,) for relator.

JAMES H. HOOPER, *pro se.*

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an original proceeding in this court, being a petition for the disbarment of the respondent, James H. Hooper, who was enrolled as an attorney in this State on the 22d day of October, 1894.

On the 29th day of April, 1897, the respondent, as the attorney for one Elgin B. Hodgkins, instituted a suit before a justice of the peace of Cook county against R. McMillen, J. Edward Hope and Henry J. Thayer to recover the sum of $200. Summons was issued and served on Thayer and returned not found as to the other defendants. The cause was continued several times, and on July 1, 1897, was dismissed. We find from the evidence that the respondent said to the justice of the peace, in the presence of Thayer and his attorney, that his client was not in the State and that he had not been able to get him into court and that he would not put the defendant to any further trouble, and asked to have the cause dismissed, and thereupon the order of dismissal was entered. Upon the last day allowed for an appeal the respondent filed with the justice what purported to be an appeal bond for the appeal from the judgment of dismissal, to the county court of Cook county. The bond was in the sum of $10, and purported to bear the signature of the plaintiff, Hodgkins, as principal and that of the respondent as surety. The respondent signed the name of Hodgkins to the bond without having power of attorney so to do and without indicating that the signature was by another than Hodgkins. It is clear that Hodgkins did not know that the bond had been signed or was to be executed until several weeks after it had been filed. The cause was removed by the force of the appeal bond to the county court, and there judgment was entered by default against Thayer for the sum of $163.10. Respondent caused an execution to be issued on the judgment, procured the same to be levied on two city

lots in the city of Chicago belonging to Thayer, without demanding payment of Thayer or otherwise notifying him of the issuance of the execution. One of the lots was sold under the execution to W. A. Harris. Thayer, acting in reliance on the statements made by the respondent when the case was dismissed by the justice of the peace, believed the case to have been brought to an end by the judgment of dismissal, and had no knowledge whatever that an appeal had been taken or that judgment had been entered against him in the county court or that the lot had been sold. At the expiration of the period allowed for redemption the respondent produced the certificate of purchase and procured the sheriff to execute a deed purporting to convey the lots to said Harris by virtue of the judgment and sale thereunder. Soon thereafter an action in ejectment was instituted in the name of Harris, against Thayer, to obtain possession of the lot. The service of the summons in the action of ejectment was the first intimation that Thayer had that the suit against him had not been finally disposed of by the order of dismissal in the justice court. He thereupon filed a bill in chancery against Harris and the respondent for a decree canceling the deed made to Harris, on the ground that the same had been fraudulently obtained by Harris and the respondent acting in collusion. Harris and the respondent were personally served and answered the bill, and the cause was fully heard and a decree entered vacating and canceling the deed in accordance with the prayer of the bill.

The decree recited that the proofs established that when the case of *Hodgkins* v. *Thayer* was called for trial before the justice of the peace said Hooper stated to the said justice, in the presence of the said Thayer and his attorney, that the said Hodgkins was absent from the State of Illinois, and suggested or consented that the said suit be dismissed, which was thereupon done; that the said Thayer and his attorney, being thereby led to believe that the said suit was abandoned by the said Hodgkins, paid no further attention to the same;

that after the dismissal of the said suit said Hooper, without the knowledge, consent or acquiescence of the said Hodgkins, signed the name of the said Hodgkins as principal and his own name as surety on an appeal bond in the penal sum of $10 for an appeal from the dismissal of the said suit to the county court of Cook county aforesaid, and on the 20th day of July, 1897, without the knowledge, consent or acquiescence of the said Hodgkins, filed the same with the said justice and advanced the costs of said appeal with his own money; that if the said Hodgkins had any knowledge of the said appeal before the commencement of this suit he had no knowledge thereof until long after the said appeal had been taken and the time allowed by law for taking the same had elapsed; that the said cause was called for trial in the said county court, and, neither the said Thayer nor his attorney having any knowledge or information of the taking of the said pretended appeal or of the pendency of the said suit in the said county court, the said cause was tried *ex parte,* and a judgment was rendered therein against the said Thayer for $163.10 and costs of suit; that as to what took place at said *ex parte* trial the testimony of the said Hooper and Hodgkins is contradictory, conflicting, and on the part of one or the other, or both, untruthful; that at the time of the rendition of the said judgment the said Thayer was not, and never had been, indebted to the said Hodgkins in any sum whatever; that the said Thayer was at that time, and for many years previously had been, a business man in the city of Chicago, Cook county, aforesaid, as a member of the firm of Thayer & Chandler, engaged in the sale of artists' materials and supplies, his name during all that time being in the city directory of said city of Chicago, and he during all that time being the only person of the name of Henry J. Thayer in the said city of Chicago, so far as shown by the said city directory; that at the time of the rendition of the said judgment the said Hodgkins, according to his own testimony, knew of the whereabouts of the said Thayer, and

the said Hooper knew, or by the slightest effort could have ascertained, the whereabouts of the said Thayer; that the said Thayer was then a man of large means and financially well able to pay the said judgment on demand; that the said Hooper, who had full charge and control of the said matter, made not the slightest effort to obtain a speedy payment of the said judgment by personal demand upon the said Thayer, but, on the contrary, with the intent and design to defraud the said Thayer of valuable real estate exceeding in value the sum of $7000, the said Hooper, craftily availing himself of his knowledge of the law and legal procedure, dishonestly, and contrary to his obligations and duty as an attorney and counselor at law, perverted and prostituted legal process and procedure as a means of fraud and oppression, and colluded and conspired with the said defendant, W. A. Harris, to obtain for one or the other, or both, valuable real estate in satisfaction of the said judgment; that the said Hooper, instead of endeavoring, as a faithful attorney and officer of the court, to realize the amount of the said judgment speedily and expeditiously and without unnecessary cost and expense, colluded and confederated with said Harris to use the execution issued upon the said judgment to obtain the title to valuable real estate and to deprive the said Thayer thereof, without his knowledge, and with that end in view the said Hooper, on November 6, 1899, without the knowledge of said Thayer or his attorney, sued out an execution from said county court upon said judgment, and afterwards, on November 13, 1899, placed the same in the hands of the sheriff of Cook county, with instructions not to make any personal demand upon the same, but to levy the same upon lots 8 and 9, etc.; that contrary to the denials, under oath, of the said Hooper and Harris on the hearing of this cause, it appears that the said Hooper has acted in other cases as the attorney of the said Harris; that in many respects the testimony of the said Harris appears inherently untrue and unreliable, and often appears to have

been concocted to fit the requirements of the occasion; that although he denied, under oath, that the said Hooper was his attorney or his adviser, he in eight or nine or more instances bought real estate at sheriff's sale where the said Hooper was the execution creditor's attorney, without any other advice than what information he obtained from the said Hooper, or any advice or information whatever except such as he obtained from the said Hooper, as to the regularity or validity of the various proceedings wherein the sales were had, or as to the title or ownership of the property sold or the location or value thereof; that from the said Harris' own testimony he at no time bought at any sheriff's or judicial sale where the judgment creditor was represented by an attorney other than the said Hooper, and that he himself is not an attorney and has never studied law and is not familiar with legal proceedings; that the said Harris did not pay any part of the amount bid by him for the said lot 8, as aforesaid, but the said Hooper paid said sheriff only the expenses of said sale, amounting to $7.42, and satisfied the balance of the bid by directing the said sheriff to return the said execution satisfied, which was done by the said sheriff. The decree further found that said lot 8, with the improvements thereon, was of the value of at least $13,000; that Harris had paid only the sum of $7.42 on the purchase price, being the costs only; that the respondent, Hooper, wrote the *præcipe* and declaration in the action of ejectment but signed the same in the name of said Harris *pro se,* and that the *præcipe* and declaration were produced on the trial of the cause but have since disappeared. This decree was not appealed from but remains in full force.

It was also proven that in a number of other cases pending before justices of the peace the respondent had pursued the practice of causing the cases to be dismissed, for the purpose of inducing the defendants therein to believe that the suits had been there finally disposed of, and afterwards filed appeal bonds with the justices, thus bringing the cases into

the county, circuit or superior court without notice to the defendants, taking judgments by default, well knowing that the defendants thereto had been deceived into the belief that the cases had been dismissed and finally disposed of by the plaintiff in the justice courts, and intending that they should be so deceived and misled by the course pursued by him in the justice courts. It was also proven that in some of the other of these cases in which he, by his deceitful and fraudulent practice, had obtained judgments, he sought to further wrong and defraud the defendants therein, as he did Thayer, out of valuable real estate by directing that the sheriff should not seek the defendants to notify them of the issuance of the executions on such judgments or should not seek to find personal property wherewith to satisfy the executions, but should levy upon and sell real estate the description whereof he gave him, with the purpose and intent upon his part that such real estate should be sold without the knowledge of the owners thereof that judgments had been entered against them or that the real estate had been levied upon. Harris was also the purchaser in several other of these cases. In these cases the respondent prostituted the remedies and processes of the law, and unlawfully deceived the defendants in the furtherance of his fraudulent scheme to wrongfully procure judgments without hearing or trial and to wrong and defraud the defendants out of their property. Such misconduct warrants a judgment of disbarment. (4 Cyc. 909-911.)

We think the proof establishes that the respondent was guilty of deceiving and misleading one of the judges of the circuit court of Cook county by taking a judgment by default in the case of *Goldberg* v. *Metropolitan City Express Co.* The summons had been returned served by leaving a true copy with Michael Kelly, as the agent of the defendant express company. The respondent represented to the court that the plaintiff was entitled to a default when at the time, as he well knew, there was on file a motion to quash the ser-

vice, supported by an affidavit which, if true, established that Kelly was not an agent of the company and that the service of the summons did not authorize the entry of a default. This judgment was afterwards vacated, on motion, by an order of the court, in which it was recited that it appeared "to the satisfaction of the court that said judgment was procured by fraud, actual or constructive."

The petition also charges that the respondent has been guilty in a number of instances of improperly abstracting and removing from the files or concealing various records of the courts in the cases in which he was interested as an attorney or personally as a party. In the case of *Rehm* v. *Odell,* (a chancery proceeding pending in the superior court,) the respondent and one A. G. Dicus had filed objections to the report of the master. They procured consideration of the objections to be postponed or continued on various grounds several different times, and finally on the ground that the master's report could not be found. Subsequently a receipt was found given to the clerk for the master's report, signed by the respondent and dated the same day that consideration of the objections was postponed because the report could not be found. This receipt was found among the files in another case. The objections to the master's report were finally overruled and a decree entered and a motion was subsequently entered to vacate and set aside the same. In disposing of the motion the chancellor entered the following finding of fact: "The court further finds that owing to the peculiar circumstances in this case brought about by the conduct of A. G. Dicus and James H. Hooper, counsel engaged herein, culminating in the abstraction and concealment of the master's report filed in this cause, the motion of the complainant for a decree of sale was and is an emergency matter," etc.

In the case of *Michaelson* v. *Creedon,* being one of the cases in which the respondent appeared as counsel for the plaintiff and dismissed the cause before the justice, and after-

wards, with the fraudulent and deceitful intent to obtain judgment without the knowledge of the defendants, caused appeal bonds to be filed and judgments to be entered in the higher courts, there was a note on file among the files in the justice court, as follows: "Let the case be dismissed, but do not let the record show that the plaintiff asked for the dismissal." This note had disappeared.

In the case of *Goldberg* v. *Metropolitan City Express Co.,* hereinbefore referred to, the summons was returned served by delivering a copy to Michael Kelly, as agent of the defendant company, and there was on file when the respondent procured a default to be entered, a special appearance, and a motion to quash the return, and an affidavit of said Kelly denying that he was an agent of or in any manner connected with the company. This special appearance, motion and affidavit disappeared. The evidence tends to show these documents were in the possession of the respondent at the time of the hearing of the motion to set aside the default and vacate the judgment, but since cannot be found nor have the same ever been receipted for to the clerk of the court.

The *præcipe* and declaration in the ejectment case of *Harris* v. *Thayer,* purporting to have been drawn by Harris *pro se* but shown to have been in the handwriting of the respondent, have disappeared from the files.

The respondent was shown to be guilty of unprofessional conduct in preparing for the clerk of the circuit court of Cook county, and procuring to be signed by the clerk, the transcript of the record in the case of *Norton* v. *Olivet Baptist Church,* on appeal, by deceitfully incorporating a certified copy of a decree in another case, and of a special commissioner's deed and a certificate of the record of the deed as having been offered in evidence before the master and excluded by the master, when, as matter of fact, as the respondent well knew, the documents had not been offered or tendered in evidence before the master.

That the respondent is wanting in that high sense of personal or professional integrity which should animate those who appear before the courts in the capacity of attorneys is demonstrated by proof, from which it appears that in order to obtain a letter which he had written to one Schmedtgen, and which was in the possession of one James H. Fitch, an attorney at law, the respondent called upon Fitch, who did not know him, and represented to Fitch that his name was Morris Berkson, and that he was a clerk in the office of Israel Cowan, an attorney at law, and that Mr. Cowan had heard there was something wrong about the matter referred to in the letter, and asked Mr. Fitch to allow him to take the letter to Mr. Cowan. Fitch allowed the respondent, whom he believed to be Berkson and to be acting for Mr. Cowan, to take the letter. The letter was never delivered to Mr. Cowan nor has Fitch ever been able to secure the possession thereof.

The testimony has impressed us with the conviction that the respondent is so wanting in professional and personal fairness and integrity as to render him unworthy of public confidence and unsafe and unfit to be entrusted with the powers and duties of an attorney at law.

The Statute of Limitations has no application to delinquencies such as have been shown to exist. The court, in such cases, will consider any unexplained, unreasonable delay in presenting the charges, and also whether, by reason of such delay, the accused has been deprived of a fair opportunity of securing proof to meet the accusation; but the proceeding for the disbarment of an attorney is not barred by the express terms of the Statute of Limitations, nor will the courts establish a limitation, as to the time in which such proceedings may be instituted by analogy to the Statute of Limitations, unless, from the nature or circumstances of the particular case, it appears that it would be unjust or unfair to require the attorney to answer. as to such occurrences. (4 Cyc. 915.)

The rule will be made absolute, and judgment entered striking the name of the respondent from the roll of attorneys of this court.

*Rule made absolute.*

Mr. JUSTICE SCOTT took no part in the decision of this cause.