(No. 24866.— )
In re William G. Anderson, Attorney, Respondent.

*Opinion filed February 15, 1939.*

SHAW, C. J., and STONE and ORR, JJ., specially concurring.

CHARLES LEVITON, *amicus curiae.*

W. G. ANDERSON, *pro se,* respondent, (HUGH W. HOUSUM, of counsel.)

Mr. JUSTICE WILSON delivered the opinion of the court:

A report filed by the board of managers and the committee on grievances of the Chicago Bar Association, as commissioners of this court under rule 59, concerning a complaint by the association's committee on administration of criminal justice charging William G. Anderson with unprofessional conduct as an attorney and counsellor at law, recommends his disbarment. Respondent has filed exceptions to the report and the cause is submitted upon the record and proofs.

William G. Anderson, the respondent, was licensed to practice law in this State on March 28, 1896. On April 20, 1916, he was suspended for a period of two years and until restored by order of this court. (*People* v. *Anderson,* 273 Ill. 37.) Subsequently, on October 14, 1921, his name was reinstated on the roll. He has since been engaged in the practice of his profession in Chicago where he has had extensive experience in the filing of *habeas corpus* petitions. The present proceeding concerns the propriety of respond-

ent's professional conduct in connection with the discharge of Vincenzo Ciollaro from the Illinois State Penitentiary, at Joliet, on a writ of *habeas corpus* issued by the Hon. Charles A. Williams, one of the judges of the superior court of Cook county, on January 6, 1927. Ciollaro, it appears, was sentenced to life imprisonment upon conviction of murder, on October 23, 1915, in the criminal court of Cook county. On September 16, 1915, the following recital was entered in Journal D45, page 12, of the criminal court: "5693, Vincenzo Ciollaro. Parties present: Jury trial. Examination of jurors [naming them] accepted and sworn testimony heard in part, by consent of State's attorney and defendant in person and by counsel, jury allowed to separate during the trial of this cause. Cause continued until 10:00 A.M. tomorrow." The docket entry of September 16, 1915, in the Ciollaro case, recites: "Jury trial, jury sworn, testimony heard in part. By agreement jury allowed to separate during the trial of this cause. Cause cont'd to 10 A.M. tomorrow." In the margin of the docket at the right of the foregoing entry, appears this notation: "D34, 45"—a reference to the journal. On December 22, 1926, respondent subscribed and swore to a petition for *habeas corpus* in behalf of Ciollaro which alleged in part: "Your petitioner further shows unto your Honor that during the trial of said cause, after the jury was sworn to try said relator on said charge of murder, the jury so trying said cause was allowed to separate and go home until the following day without the consent of said relator personally and without an order being entered of record by the trial judge." The petition also charged that the *mittimus* did not run in the name of the People of the State of Illinois, as required by our constitution. Respondent's affidavit to the petition declared that he had read the petition, knew the contents thereof, and that the same were true of his own knowledge, except as to the matters stated to be upon information and belief, and as to those matters he believed

them to be true. The petition contains no statement purporting to be on information and belief. At the hearing on the petition the warden of the penitentiary was represented by an assistant Attorney General of the State and an assistant State's attorney of Cook county. According to respondent they were William H. Harrison and Q. J. Chott, respectively. Harrison denied that he appeared in the proceeding and disclaimed any recollection of it. Chott died in 1932. Ciollaro was produced in open court, the warden's counsel made oral return to the writ of *habeas corpus,* admitted the allegations of the petition, and according to Judge Williams, stated that they had examined the records of the cause in the criminal court. Judge Williams held that the truth of the allegations having been confessed, the detention of Ciollaro was unlawful by reason of the failure of the record to show that he expressly consented to the separation of the jury during the trial, and because the commitment did not run in the name of the People of the State. An order was accordingly entered discharging Ciollaro from the custody of the warden. On March 31, 1936, the State's attorney of Cook county made a motion to set aside the order of discharge of January 6, 1927. In passing upon the petition to expunge the earlier order Judge Williams stated that at the original trial for *habeas corpus,* the one question presented was whether the prisoner should be discharged if the jury had been allowed to separate without the consent of Ciollaro or his counsel, and that the order of discharge was based on this point. Proclaiming that a legal fraud had been perpetrated on the court Judge Williams vacated the order of January 6, 1927, and remanded the prisoner to the custody of the warden of the penitentiary at Joliet to complete the service of his sentence. Ciollaro was a fugitive from justice when the complaint was heard by the commissioners.

The gist of the complaint against respondent is that the statement of fact in the *habeas corpus* petition relative to the separation of the jury was not known to him to be true,

was in fact untrue, and, further, that he could have ascertained the facts with respect to the orders entered by the court by examination of Journal D45, kept in the office of the clerk of the criminal court; that in making the quoted statement, under oath, without making full inquiry into the state of the record, he, respondent, was guilty of a serious dereliction of his duty to the court, and in consequence thereof, and of the admission of such allegation by the representatives of the warden, the trial judge was misled into entering the order for the discharge of the prisoner, Ciollaro.

From respondent's testimony it appears that although the docket recited the jury was allowed to separate "by agreement" he placed reliance upon the absence of a notation to the effect that Ciollaro had personally assented in open court to the separation by agreement with counsel for the People. He testified that interested persons retained him to sue out a writ of *habeas corpus* in behalf of Ciollaro; that he visited the prisoner in the penitentiary where the latter informed him that during the trial, in 1915, he told his attorney, Lewis A. Hauschild, (since deceased,) he did not want the jury separated as "it might be tampered with;" that upon his return to Chicago, he, respondent, investigated the docket which he assumed contained a correct entry of all orders in the *Ciollaro case,* and that he based his petition upon its wording, together with what Ciollaro had told him personally about the separation of the jury. Respondent testified further that the docket was exhibited before Judge Williams and that the latter, and, also, the warden's counsel saw it. He asserted that he honestly and conscientiously believed the docket entry did not include the personal assent of Ciollaro. On cross-examination, respondent stated that after examining the docket and before executing the petition he asked the clerk whether he had any other record on the point; that the clerk replied he could not find the particular journal bearing on the trial, inform-

ing him further that the books had been misplaced. Respondent made no further effort to inspect the records. He declared that he had examined dockets in clerk's offices for many years and had never discovered a single docket which was wrong. Upon interrogation as to whether he had ever seen any docket which contained the full and complete order of the court respondent answered in the negative, saying: "The order in the docket should contain a proper recital of the gist of the order, and I knew the gist of the order would be that the defendant personally assented independent of any agreement between counsel for the People and counsel for the defendant." From his experience in examining original orders in other cases in the journals respondent admitted he had long known that if he desired to find the wording of an order he would go to the docket to ascertain whether an order had been entered and then would resort to the journal to find the order. Further testimony discloses his familiarity with the mechanics of preparing the journal and docket, respondent stating that the orders are written up *in extenso* in the journal; that the docket is prepared from the journal, and that when a certified copy of an order is sought it is the order in the journal which is used for this purpose.

Respondent's motion to dismiss on the ground that the complaint against him is not sufficiently specific to confer jurisdiction will be denied. The complaint narrates the history of the matters pertaining to the *habeas corpus* proceedceeding, and is fully documented. It meets the requirement of rule 59 that a complaint against an attorney at law must be sufficiently clear and specific in its charges as reasonably to inform him of the acts of misconduct he is claimed to have committed. Respondent's answer, his supplemental answer and his testimony demonstrate that he was adequately apprised of the charges against him.

The contention that lapse of time may be urged against disbarment proceedings is not well taken. We will not

refuse to hear charges against an attorney because of the expiration of some period of time unless it would be unjust or unfair to compel him to answer such charges. (*People* v. *Sherwin,* 364 Ill. 350; *People* v. *Hooper,* 218 id. 313.) The dereliction of respondent upon which the complaint is based first came to light more than nine years afterwards. Manifestly, the circumstances attending this case demanded that the respondent be required to answer the complaint.

The sufficiency of the evidence is assailed. Respondent was not a novice in the practice of *habeas corpus* cases nor in the criminal court. By verification of the false affirmative allegation in the petition for the writ of *habeas corpus* that the jury had separated at the criminal trial not only without the consent of Ciollaro but also without an order permitting such separation, and in urging this point upon the court, respondent was instrumental in assisting in a miscarriage of justice whereby a convicted murderer was released from incarceration in the penitentiary many years before he would have been eligible to parole. The docket entry to the effect that the jury was allowed to separate "by agreement" was sufficient to place respondent and all others participating in the proceeding upon notice. It did not show that the agreement was not entered into by Ciollaro, personally, even though it did not disclose by whom the agreement was made. Due investigation would have soon disclosed that Ciollaro and his counsel did agree to the separation of the jury. Proof is wanting, however, that respondent made any real attempt to search for the alleged lost journal between December 22, 1926, the day he swore to the petition, and January 6, 1927, when Ciollaro won his release. Had respondent ordered a certified copy of the order of September 16, 1915, he would have received, as he well knew, a copy of the order in the journal. The mere fact that the docket set forth the separation of the jury was by agreement but failed to state affirmatively that it was

by the personal agreement of Ciollaro did not justify respondent in making reckless allegations, under oath, that it was not by agreement of Ciollaro personally, particularly when he testified he had never seen a docket which contained a full and complete copy of an order. The professed reliance upon the docket cannot exculpate respondent.

A disciplinary proceeding is not a criminal case with its formalities of pleading and burden of proof, as respondent insists, but is an investigation of an attorney's conduct to determine whether he should be disbarred or otherwise disciplined. (*In re Malmin,* 364 Ill. 164; *In re Needham,* id. 65; *In re Sanitary District Attorneys,* 351 id. 206.) After having been reinstated by this court it was incumbent on the respondent to so conduct himself as an attorney that he should not again bring dishonor to the profession and be again brought to the bar of this court in a disciplinary proceeding. Primarily because of the misrepresentation contained in the petition for the writ of *habeas corpus* executed by respondent, and the affidavit thereto sworn to by him, a convicted murderer who had served only a part of his sentence is now at large and beyond the jurisdiction. *Habeas corpus* proceedings, especially those involving the attempted release of persons in the penitentiary, merit the most careful inquiry not only by attorneys representing relators but also by those representing public officials. An attorney should avoid the possibility of rendering himself subject to severe and deserved criticism, if not condemnation, for not fully investigating the state of the record in such matters. Abuse of the long-cherished right to the writ of *habeas corpus* cannot be tolerated. For the reason, however, that respondent's act was not the sole motivating force resulting in the order of January 6, 1927, and because the evidence does not show, with requisite certainty, that he wilfully intended to perpetrate a fraud upon the court, he will not be permanently disbarred. Complete culpability cannot be placed on him under the circumstances previously

recounted. On the other hand, the partial culpability of others cannot exonerate him.

Respondent will therefore be suspended from practice as an attorney and counselor at law within this State for the period of three years from the filing of this opinion.

*Respondent suspended.*

SHAW, C. J., and STONE and ORR, JJ., specially concurring: We agree with the views expressed in the opinion but believe, on the record in this case, that the respondent should be disbarred.