(No. 32947.—

IN RE MELVILLE R. THOMSON, Attorney, Respondent.

*Opinion filed May 24, 1954—Rehearing denied September 20, 1954.*

CHARLES LEVITON, of Chicago, *amicus curiae.*

MELVILLE R. THOMSON, of Chicago, *pro se.*

Mr. JUSTICE BRISTOW delivered the opinion of the court:

We have before us the report of the Board of Managers and the Committee on Grievances of the Chicago Bar Association as commissioners of the court under Rule 59 recommending the disbarment of Melville R. Thomson. Respondent has filed his exceptions to this report. The cause was thoroughly heard by the Committee on Gievances, and the voluminous record has been accurately abstracted in the report and recommendation by the Board of Managers. The report of the commissioners is predicated upon three separate complaints, each involving the

conversion to his own use of moneys entrusted to him for others.

The respondent, Melville R. Thomson, has practiced law in the city of Chicago since his graduation from Northwestern Law School in 1912. The following is a brief summary of the facts underlying the various specifications embraced in the complaint. In the latter part of the year 1947 Mrs. Eubank employed respondent to represent her in a divorce proceeding. She paid him a fee of $135, a part of which was to cover the court costs, and he also received a fee from her husband in the sum of $250. Pursuant to this employment he obtained for Mrs. Eubank a decree for a divorce which was entered in the superior court of Cook County on January 5, 1948. The respondent received from Mr. Eubank $1000 which was to be paid to Mrs. Eubank in accordance with the provisions of that divorce decree.

It is undenied that Thomson, instead of delivering the money to his client, converted it to his own use and did not make complete restitution of the same until August 16, 1951. Mrs. Eubank called at respondent's office many, many times in an effort to obtain from her lawyer money that belonged to her. Each time he sought to assuage his client's disappointment with some fancy explanation, a product of deceit and dishonesty. He first told her that there would be a short delay in the payment of the money because he had to sell some securities. This was not the truth for he had no securities at that time. He now seeks to convince this court that he borrowed the $1000 from Mrs. Eubank, and that he gave her his promissory note evidencing the indebtedness. As we read the record, he is not sustained in this contention. Respondent finds dubious refuge in the criminal court record that the embezzlement charge against him which was filed by Mrs. Eubank was dismissed. A fair interpretation of this phase of the proceeding indicates that respondent appeared before a com-

passionate tribunal who viewed sympathetically the distress of a member of the bar—and dismissed the criminal charge upon his promise to make restitution. Significantly, Thomson made his final payment of $400 to Mrs. Eubank in the courtroom on the day the criminal charges were dismissed. A claim of vindication based upon the foregoing facts is most illusory. We fail to find any mitigating circumstances in respondent's favor. He used his client's money for 43 months without even paying any interest and causing her endless aggravation and worry in her long and irritating pursuit of the principal.

The Hinks specification, involving another charge, may be briefly summarized as follows: On April 29, 1948, Thomson, as attorney for Raymond Goodburne, went to the office of Attorney Frank T. Hinks in Detroit, Michigan. Raymond Goodburne was anxious to obtain a divorce from his wife who was represented by Hinks. It appears that respondent's client was a fugitive from justice in Michigan, having defaulted in payment of support orders for his children. Hinks and the respondent agreed upon a property settlement wherein Mrs. Goodburne was to receive $1000 in lieu of alimony and dower, and was also to receive from Goodburne a quitclaim deed to her of his interest in certain land on Lake Huron in Alpena County, Michigan. Hinks advised respondent that he would not proceed with the divorce suit until he was assured by respondent that he had the $1000 in his hands and also the deed executed by Goodburne, both of which were to be delivered to Hinks upon the entry of a divorce decree.

An action for divorce on behalf of Mrs. Goodburne was commenced in Alpena, Michigan, in August, 1949. Prior to this time Thomson had advised Hinks that he was in possession of the $1000 and the quitclaim deed. The divorce decree was entered on January 21, 1950, containing the terms of the settlement which Hinks and respondent had agreed upon, and thereafter, on January 31,

1950, Hinks wrote the respondent requesting the $1000 and the deed. But Thomson had converted this money to his own use. To postpone the day when he must disgorge, he wrote Hinks that there there were certain features of the decree that his client did not like. After some delay, the divorce decree was amended embodying all of the recommended changes. Then Hinks on March 27, 1950, and again on April 5, 1950, wrote respondent demanding the money and the deed. The respondent's secretary, on April 6, 1950, wrote as follows: "Dear Mr. Hinks: Mr. Thomson asks me to write you to advise that he is still confined to his home with illness but expects to be released next week, when he will be able to go to his vault and forward to you the money and papers in the above matter. He regrets the necessity of this short delay. Respectfully yours, W. J. Schmoll, Secy." Hinks waited until April 25 to reply, which reply reads as follows: "Dear Mr. Thomson: Thank you for letter of April 6th, written by your secretary. You can very well imagine the interest of my client and I trust that you have recovered from your illness and will now consummate this matter in pursuance of our previous understanding and in pursuance of the decree. Respectfully yours."

Becoming justifiably vexed, Hinks, on May 5, 1950, writes as follows: "Dear Mr. Thomson: Unless check for $1,000 and deed are received at once in accordance with our express understanding, I shall be obliged to institute proceedings which will be unpleasant for me and will involve you personally as well as Mr. Goodburne. Respectfully yours."

The respondent, retreating from his defenseless position, then offers still another excuse. Thomson said he was holding the $1000 and the deed until his client, Goodburne, had paid him his attorney fee. It was not until January 2, 1953, that the respondent finally paid the balance of the $1000 which was due Hinks. Thomson, on

the hearing, admitted that he was completely wrong in this transaction. The foregoing represents a kind of misconduct on the part of an attorney that denotes moral turpitude and is sure to bring the legal profession into dishonor and disfavor.

The final specification involves Josephine Abel. We deem it unnecessary to give the details of this transaction, but suffice it to say that the record clearly shows, (1) the wrongful conversion of $175, (2) an effort on the part of respondent to persuade another attorney to testify falsely in his behalf that respondent was authorized to cash the check for $175 involved in the transaction, and (3) that the respondent, in defending his misappropriation of funds involved in this charge, falsified his testimony repeatedly before the commissioners.

In the three foregoing complaints it is true that the respondent has made restitution, but only after a long period of time, after complaints had been filed against him with the Chicago Bar Association, and, on two occasions, after pressure of criminal proceedings. A repayment of funds converted does not take away the fraudulent and immoral aspects of the conversion. (*In re Koptik,* 406 Ill. Ill. 141.) Restitution or settlement made after a complaint has been filed will not absolve the respondent. *In re Both,* 376 Ill. 177; *People ex rel. Chicago Bar Assn.* v. *Hansen,* 352 Ill. 144.

The finding of the Board of Managers that Melville R. Thomson has been unprofessional and dishonorable in his professional activities, showing a lack of moral character and evidencing moral turpitude, finds abundant support in this record, and the recommendation that respondent be disbarred and his name stricken from the rolls is adopted. It is, therefore, ordered that Melville R. Thomson be disbarred and his name stricken from the roll of attorneys.

*Respondent disbarred.*