(No. 34442.— )

*In re* SOL HENRY ASHBACH, Attorney, Respondent.

*Opinion filed March 20, 1958.*

ROBERT B. JOHNSTONE, of Chicago, for respondent.

CHARLES LEVITON, of Chicago, *amicus curiae*.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

This is a proceeding to disbar the respondent pursuant to Supreme Court Rule 59. On April 20, 1954, the committee on inquiry of the Chicago Bar Association filed complaint with its committee on grievances, commissioners of this court, charging respondent with accepting a blank power of attorney from a client; endorsing the names of clients on drafts or causing such endorsements to be made without due authorization; acting as a witness to releases purporting to bear the signatures of clients, which he knew were not true and genuine; making settlement of claims, executing releases on behalf of clients without authority, and withholding information of such settlements; converting the proceeds of the settlement of such claims, as well as funds of clients, to his own use; and refusing to account for proceeds of settlement made on behalf of such clients and for funds belonging to them. Such charges pertained to certain clients named in the complaint.

The respondent filed answer substantially denying the charges. At various times during 1954, 1955, and 1956, proofs were taken by the committee on grievances of the Chicago Bar Association, sitting as commissioners, after which the hearings were closed. Thereafter respondent moved to reopen the proofs, which motion was allowed, and the report of the commissioners was served upon him. Respondent made further motion to reopen proofs which was likewise allowed: three further hearings were held, and the matter was taken under advisement. On January 16, 1957, the commissioners' supplemental report was served on respondent and objections filed. Both the original and supplemental report found the respondent's conduct, with respect to the first four counts of the complaint, tainted with moral turpitude and recommended disbarment. Objections to the reports were overruled and such reports

were transmitted to this court. On April 4, 1957, the commissioners denied respondent's motion to again reopen proofs, and he filed supplemental objections.

Since the recommendations of our commissioners are advisory only, we have carefully examined the record pertaining to the four counts which they sustained, and conclude that a proper consideration of the charges in issue requires a brief resumé of the evidence relative to each count.

Count I—The Spicer Matter:

Harvey Spicer was involved in an automobile accident in which he suffered injuries to his person and damages to his property. He was referred to respondent by the personnel of the garage where his car was taken, and on February 4, 1952, respondent procured from Spicer a power of attorney and a one-third contingent-fee contract. On July 10, 1952, respondent settled Spicer's claim for $2,500 and executed releases by signing, or causing to be signed, the names of Harvey Spicer and his wife Mary Spicer, and signed his own name as a witness to their simulated signatures. He similarly endorsed, or caused to be endorsed, the names of both Harvey and Mary Spicer on the settlement check which he cashed in July, 1952. Spicer testified that he talked to respondent several times after August, 1952, and was advised that his case had not been settled. In the early part of 1953, Spicer told respondent that he had a letter from the insurance company and respondent asked to see him at once. The next day Spicer obtained another attorney, and on August 7, 1953, at a meeting in that attorney's office, respondent first offered to pay Spicer $1,200, which offer was refused, and subsequently paid him $1,850 by four money orders, and in addition paid the garage bill of $649.10, although there is no evidence of the date this bill was paid.

Respondent offered no defense to the forgery of Mary Spicer's name on the release and check, but attempted to

excuse it as a minor matter. He claimed that the delay of a year between the settlement and remittance resulted either from Spicer's absence from Chicago or his request for more money, and that he retained $1,200 of the proceeds of the settlement in cash for Spicer in a steel filing cabinet. It is clear and undisputed that he forged the name of Mary Spicer to the release and check, simulated the signature of Harvey Spicer on the release, which he witnessed as genuine, and endorsed the check by affixing the name of Harvey Spicer thereon; that he did not execute the release or check under the power of attorney; that he withheld information of the settlement from Spicer; and that Spicer did not obtain his share of the settlement until a year following its consummation and after he had been forced to contact the insurance company and obtain another lawyer.

Count II—The Grace Guarnieri Matter:

Grace Guarnieri was injured in a W. T. Grant Co. store in July, 1951, signed a contingent-fee contract employing the respondent on August 6, 1951, and thereafter talked with his office from time to time. On August 15, 1951, respondent wrote a letter to W. T. Grant Co. stating that he represented Grace Guarnieri and enclosed a notice of attorney's lien bearing his signature as her attorney. On September 8, 1952, respondent settled the claim for $175 without Mrs. Guarnieri's authorization. The release delivered to the insurance company purported to bear the signatures of Mrs. Guarnieri and Albert Guarnieri, her husband, but was never presented to them and the signatures were forged. The draft was endorsed with the forged signatures of Grace Guarnieri and Albert Guarnieri, her husband, and the genuine signatures of respondent and Mordecai More. About two months later, Mrs. Guarnieri received respondent's personal check for $50.

Respondent seeks to evade responsibility for this transaction by shifting the blame to Mordecai More, a younger

attorney who was a clerk in his office and handled cases for him. However, the testimony of More and respondent is in complete conflict pertaining to the processing of this claim, yet it stands undisputed that the original contract of employment was with respondent; that he sent a letter and notice of attorney's lien to the W. T. Grant Co., and that he endorsed the draft. He cannot now contend that he had no connection with this claim. An attorney cannot avoid his professional obligations to a client by the simple device of delegating work to others.

Count III—The Bacon and Pittman Matter:

Joyce Bacon and Anna Marie Pittman were injured in an automobile accident on November 3, 1952. On November 4, respondent called on Miss Bacon and they proceeded to the home of Mrs. Pittman where both women retained him to prosecute their claims for a fee of one third of the recovery. A dispute exists as to whether both women signed blank powers of attorney, but only one executed power of attorney was offered in evidence. In February, 1953, respondent settled both cases. While he claimed authority to settle the cases under the controverted powers of attorney, he admitted that in writing the signatures of his clients or in causing them to be written on the releases, he had attempted to imitate such signatures "to expedite the matter and not run into any red tape." Mrs. Pittman's case was settled for $150 and Miss Bacon's for $1,350. The drafts were endorsed in the same manner as the releases and were cashed by respondent. Miss Bacon called respondent often in March and on all occasions he withheld information of the settlement, and finally, on May 1, 1953, after she told him she knew the case had been settled, he told her to come in and he would give her the money. On May 1, Mordecai More gave her respondent's check for $270, and gave Mrs. Pittman respondent's check for $75. Miss Bacon did not deposit this check until May 29, 1953, when it was returned because respondent's account had been closed. In August,

1953, Miss Bacon retained another attorney to represent her in the matter and he obtained from respondent $475 for her, and $100 for Mrs. Pittman.

Respondent's defense to this transaction is that he held out of the settlement $270 for Miss Bacon and $75 for Mrs. Pittman, which he put in the aforementioned steel filing cabinet, yet the ultimate remittance to them was by check. He attempted to justify the amounts paid by check to these clients by claiming credit for the payment of Miss Bacon's doctor bill and automobile repair bill, and for the payment of Mrs. Pittman's doctor bill. However, there is neither evidence of authorization for the payment of these bills, the propriety of their amount, nor that they were paid prior to Miss Bacon's complaint. The record is clear that respondent did not pay Mrs. Pittman's doctor bill.

Count IV—The Harvey Matter:

On August 8, 1951, Harris Harvey of Williamsville, New York, his wife Nellie, and his daughter Dorothy, were in an automobile accident in Chicago and on the same day went to respondent's office. They signed the usual one-third contingent-fee contract with the respondent, and Harris Harvey apparently signed a blank power of attorney. The signatures of Nellie and Dorothy Harvey also appear on powers of attorney in respondent's possession, but it is undisputed that they were never signed by them. Harris Harvey approved a settlement offer of $425 for property damage and $345 for Dorothy Harvey's personal injuries, on November 8, 1951. On November 15, 1951, respondent signed releases which purported to be executed by the claimants and obtained drafts totalling $772.83, which he similarly endorsed and cashed. Again he claims that the proceeds of the settlement were placed in the steel filing cabinet. Mr. Harvey repeatedly wrote to respondent concerning the status of the case. Respondent replied, but did not answer Harvey's questions and thereby withheld knowledge of settlement from the Harveys. He did not offer to

account to them until September, 1952, and then only after numerous insistent requests.

Respondent now claims to have disbursed the proceeds in payment of garage and doctor bills. However, Mr. Harvey testified that the man at the garage said the bill would be $400, and the record offers neither justification for the payment of a garage bill of $560.85, nor indication of the date of payment. The record reflects that he did not pay the doctor bill of $114 until October 27, 1952, and then only after he was pressed by the doctor.

Respondent has sought to defend his action by a vigorous attack on the commissioners and the Association of Casualty and Surety Companies which conducted an investigation of the charges. He further contends that any impropriety on his part was not fraudulent, but was due to his inattention to business occasioned by other financial problems; and that the commissioners erred in certain rulings on evidence and in matters of procedure.

At the outset, we find nothing in the record to indicate any impropriety in the manner in which the hearings were conducted by the commissioners. The fact that the charges against respondent were actively investigated by the Association of Casualty and Surety Companies is not unusual in the light of the record which establishes that he obtained funds from its member companies by the use of forged and fraudulent signatures on insurance company releases, drafts and checks. Neither is there any impropriety in the use of the evidence thereby obtained to support the charges of the complaint. There is no basis for respondent's contention that the proceedings were not instituted by the parties aggrieved or that the investigation and use of this testimony vitiated the action before the commissioners. The record fails to disclose fraud, coercion or overreaching on the part of the association in connection with its investigation. But regardless of the source of the evidence, it is our duty to

decide the case on its merits. For even "If it were true that the charges would not have been made except for personal hostility, it would neither relieve the court from the duty of investigating the charges nor the respondent from disbarment if they were found to be true." *People ex rel. Chicago Bar Assn.* v. *McCallum,* 341 Ill. 578, 598; *People* v. *Holt,* 279 Ill. 107, 109.

Respondent has further attacked certain rulings on evidence and procedure by the commissioners. As to their rulings on the evidence, it is sufficient to say that we have carefully examined all the evidence as a court of initial hearing, and have not abandoned our function to the commissioners, who act only in an advisory capacity. (*In re McCallum,* 391 Ill. 400.) In examining this record, we have not allowed barren technicalities to stand in the way of the respondent's defense. *In re Heirich,* 10 Ill.2d 357.

The gist of respondent's defense is that the acts charged were not the result of fraud, but "were due to the adoption of slip-shod, short cut methods and lack of personal attention to business," occasioned by his financial involvement in certain unsuccessful restaurant operations. We think this characterization is unduly euphemistic. The record clearly shows a planned course of conduct whereby the respondent, acting under the guise of powers of attorney executed in blank, or under fraudulent powers, proceeded to settle claims, usually without the knowledge or authorization of the client; that in some instances he had power of attorney adequate to authorize him to sign releases and endorse drafts thereunder, yet he chose to forge, imitate or simulate the signatures of his clients on releases and on checks and drafts issued in the settlement of such claims, whereby he kept information of such settlements from his clients and avoided the safety precautions which the insurance companies would have required had the instruments been executed by the respondent on behalf of his respective clients pursuant to the power of attorney; that he wilfully

withheld knowledge of such settlements from his clients; and that he failed to account to such clients for the proceeds until long after he had cashed the drafts, and then only after the client had contacted the insurance company and secured another attorney. Despite every indulgence, the record clearly and convincingly proves that respondent converted the proceeds of such settlement to his own use and failed to account until extraordinary pressure was exerted against him.

The claim of respondent that he segregated the proceeds of these settlements in cash in a steel filing cabinet, and made disbursements therefrom without any written record or account, an assertion which is common under such circumstances, (*In re Clark*, 8 Ill.2d 314, 318; *In re Thomson*, 3 Ill.2d 308, 311,) taxes our credulity. The acts of respondent were not merely slip-shod, they constituted a designed fraudulent conversion of his clients' funds. Such action involves moral turpitude and warrants disbarment, (*In re Thomson*, 3 Ill.2d 308; *In re Rosenberg*, 413 Ill. 567,) and the repayment of the funds under pressure does not mitigate the offense. While respondent's financial reverses may offer a motive for the conversion of the funds, such circumstances do not afford an excuse for his acts. *In re Rosenberg*, 413 Ill. 567; *In re Zahn*, 356 Ill. 283.

We are shocked by respondent's defense to the Bacon charge that "The amount actually due Miss Bacon was exceedingly trivial compared to the problems with which Respondent was dealing * * *." Such a callous attitude toward the funds of a client cannot but discredit the legal profession. This court cannot permit acts and omissions of the type here portrayed to be perpetrated upon the public. Such conduct shows a lack of fidelity to private trust, tends to defeat the administration of justice, and to bring the courts and the legal profession into disrepute. Public confidence in our judicial system is undermined by such dere-

liction of duty and it is the obligation of this court to strike from the rolls the names of those lawyers who are unable or unwilling to meet the high standards and traditions by which we govern the conduct of the legal profession. The record before us clearly presents such case.

The finding and report of the commissioners is approved and the respondent's name is stricken from the roll of attorneys of this court.

*Respondent disbarred.*