(No. 46403.—

*In re* SAMUEL B. BOSSOV, an Attorney, Respondent.

*Opinion filed March 24, 1975.—Rehearing denied May 29, 1975.*

SCHAEFER, J., took no part.

KLUCZYNSKI and GOLDENHERSH, JJ., dissenting.

Albert E. Jenner, Jr., Theodore R. Tetzlaff, and Holland C. Capper, all of Chicago, for respondent.

John F. McCarthy, of Chicago, for *amicus curiae* the Chicago Bar Association.

MR. JUSTICE WARD delivered the opinion of the court:

A division of the Committee on Grievances of the Chicago Bar Association sitting as commissioners of this court under our former Rule 751 recommended that Samuel V. Bossov, the respondent, be discharged from the practice of law. The complaint against the respondent, which had been filed by the Committee on Inquiry of the Chicago Bar Association, had charged him with soliciting personal injury claims, failing to account properly and pay over amounts due clients on settlements reached and with settling cases without having consulted with the clients. When the proceeding was referred to the full Committee on Grievances, that committee recommended that the sanction against the respondent be changed to suspension from practice for a period of five years. The Board of Managers of the Association then considered the record in the proceeding and has recommended to this court that the respondent be suspended for three years.

Bossov contends before us that the findings in the disciplinary proceeding were not sufficiently proved; that the participation of agents of the American Insurance Association in the investigation requires that the complaint against him be dismissed; and also that because of the unreasonable delay in the proceeding the complaint should be dismissed.

In a disciplinary proceeding the charges must be proved by clear and convincing evidence (*In re Moore,* 8 Ill.2d 373, 379) and findings made in the proceeding are entitled to virtually the same weight as the findings of any initial trier of facts in our judicial system (*In re Broverman,* 40 Ill.2d 302, 306). The credibility of witnesses is a question for the commissioners who hear and observe the witnesses. *In re Lingle,* 27 Ill.2d 459, 467.

We cannot accept the contention that the findings of improper conduct made in the disciplinary proceedings were not supported by clear and convincing evidence.

As to the charges that the respondent solicited personal injury claims, the Committee on Grievances stated that "the charges of solicitation and procurement in Counts IV, VII, VIII, IX and X and the evidence produced in connection therewith show a pattern of comprehensive solicitation and procurement of personal injury claims by and on behalf of respondent."

The evidence to support the charges in count IV showed the client had been released from the hospital at about 5 or 5:30 p.m. following an accident which had occurred between 3 and 4 o'clock in the afternoon. That evening someone phoned the client's home and later a man came to her house and left the respondent's professional card. Regarding count VII, the client testified that the respondent approached her and her son when they were leaving the hospital and asked if he could represent them in their claims. She had never heard of the respondent. That evening the respondent and another man appeared at her home and asked to represent her and her son in their

claims.

The client concerned in count VIII of the complaint testified that following an automobile accident in which he was involved the investigating police officer suggested that he would be able to get a "newer car" if he employed the respondent. That evening, the client testified, representatives of the respondent called on him and left the respondent's card. He also testified that the respondent referred him to a physician and advised him to tell the physician that he had been injured.

The client referred to in count IX testified that in the evening following an accident in which he was involved an unknown man came to him and recommended the respondent as an attorney. He gave the respondent's professional card to the client, who had never heard of the attorney. When he spoke with the respondent he told him "I feel all right," but the respondent told him, he testified, to go to see the same physician named in the evidence supporting the charge in count VIII and suggested that the client stay away from work to improve his case.

The client concerned in count X testified that a man came to his house the day after an accident in which the client was involved and recommended the respondent's services. He gave the client the respondent's card and had him sign a retainer agreement. When the client visited the respondent at his office, the agreement he had signed was on the respondent's desk.

Prior to their accidents the clients in counts IV, VII, VIII, IX and X did not know the respondent and had never heard of him.

In his testimony at the disciplinary proceedings the respondent stated he did not remember how the clients concerned in these counts came to him and his files did not indicate the circumstances of his being retained by them.

We consider the evidence of solicitation satisfied the requirement that it be clear and convincing. The respond-

ent's argument that there was no evidence that the respondent had employed anyone to solicit injury claims for him or that he had paid anyone to do so does not persuade. We consider that the evidence of solicitation, though mostly circumstantial, was convincing. What we said in *In re Krasner,* 32 Ill.2d 121, 127, under resembling circumstances, is applicable here:

"Anchoring his argument to the frequently expressed principle that charges in a disciplinary proceeding must be sustained by clear and convincing proof, (*e.g. In re Donaghy,* 402 Ill. 120, 124,) respondent contends there is no proof that Vogele, Skidmore or any other person actually solicited any cases, or that respondent had any knowledge they were doing so, and as a consequence no evidence that business was ever solicited by respondent or by others in his behalf. His theory seems to be that without direct testimonial evidence of solicitation, either by Vogele or Skidmore or the persons solicited, the proof against him is neither clear nor convincing. We do not agree. Circumstantial evidence is legal evidence and neither the commissioners nor this court are required to be naive or impractical in appraising an attorney's conduct."

As to the charges that Bossov failed to account for and pay over amounts due clients in the settlements, the Committee stated that the charges in counts I, II, III, IV and VII showed a pattern of the respondent's settling claims without proper explanation or accounting to his clients. It was stated, too, there were irregularities in the accountings by the respondent and that in one instance a client was induced to file a false statement to conceal that the client had been shortchanged in a settlement distribution.

In count I there were two clients concerned, Lancaster and Robinson. Two settlements were involved, one for

$3,000 and one for $1,000. An insurance company draft was made payable to Lancaster, Robinson and the respondent for $3,000, and a draft by a different insurance company in the amount of $1,000 was made payable to Lancaster, his wife and the respondent. The fee arrangement between Bossov and the clients was that he would be entitled to one third of any settlement as attorney's fees. Robinson received only $300 from the settlement and Lancaster received payments of $50, $35, $400, $200 and $400 from the respondent as his share of the settlements. The respondent had told Lancaster that the first settlement was for $1,000 when in fact it was for $3,000. The $200 and the second payment of $400 that Lancaster received from the respondent were gotten after Lancaster received a letter from the insurance company stating that the settlement had been for $3,000. Lancaster went with his former employer to the respondent's office and confronted him with the letter. The respondent gave Lancaster $200 in cash and told him not to return. However, the respondent later paid Lancaster an additional $400. Bossov testified that he did not know and did not have any record of what he had paid Lancaster.

The case of the client involved in count II was settled for $350. The respondent sent the client a check for $100, although the client had never authorized the settlement and had never signed a release or authorized its being signed. The respondent had filed his attorney's lien notice for 33 1/3 percent with the insurance company, and the client, of course, was entitled to two thirds of the settlement. The respondent's statement in his defense that the client wanted only $100 and that he was agreeable to the attorney's retaining all in excess of that amount is irrelevant and professionally offensive.

The testimony of the client concerned in count III was that he received $300 in cash from the respondent and also small advances not in excess of a total of $20. He never received an accounting from the respondent. The

settlement involved was $950. Respondent denied that he had given the client $300 in cash and exhibited his check made payable to the client in the amount of $587. The respondent testified that he cashed the check for the client but he didn't recall how much money was given the client.

In count IV there was a settlement of $2,400 for a woman and a $300 settlement for her minor daughter. The client testified that neither she, her daughter nor her husband had seen the insurance company's settlement draft and that she had not received any accounting from the respondent. She said she had endorsed a check which the respondent had made payable to her order but that she had not seen the face of the check. The check was for $1,700. The respondent gave her nine $100 bills after she had endorsed it. She testified that after an investigation had begun into the settlement of her case two men who identified themselves as representatives of the respondent came to her home in February or March, 1963, and after telling her there had been an error gave her five $100 bills. She wrote out and backdated a statement at the dictation of one of the men. The statement was to the effect that she had received her settlement in full from the respondent and she was told to date the statement "September 14, 1961." The respondent acknowledged that he had paid the client the additional $500, saying that he hadn't paid it earlier because he did not have the cash. He also said the client had not requested the money and he had assumed her case had been closed.

The *amicus curiae* has stated before this court that the client referred to in count VII of the complaint did in fact receive a satisfactory accounting from the respondent.

We judge that the failure of the respondent to account promptly and pay over moneys due clients was sufficiently demonstrated. Such a failure was obviously and grievously improper and of course constitutes serious misconduct. *In re Snitoff*, 53 Ill.2d 50.

We must reject the contention that activities of

employees of the American Insurance Association require that the complaint must be dismissed. The respondent's contention was that the investigation and the complaint's preparation were not conducted by the Chicago Bar Association. He said the investigators were not members of the Chicago Bar Association and were at all times subject to the direction of the insurance association. However, John Burns, who testified that he and other investigators of the American Insurance Association had been checking on professional activities of the respondent, said that he had acted as an agent of the Chicago Bar Association and that he and the other investigators had acted at the request of the bar association. They turned over the results of their investigations to that association. In the course of the investigation, and preceding and following it, he had received directions and instructions from representatives of the bar association. He testified that he did not play any part in the drafting or the filing of the complaint against the respondent and said he in no way participated in the prosecution, save as a witness. It appears from the record that the complaint was drawn by members of the Inquiry Committee of the Chicago Bar Association and that the prosecution was conducted only by committee members.

A respondent in *In re Ashbach,* 13 Ill.2d 411, made a similar argument concerning an investigation which he said had been conducted by an insurance association. This court in rejecting the argument said in part: "But regardless of the source of the evidence, it is our duty to decide the case on its merits." 13 Ill.2d 411, 417-8.

The delays of which the respondent complains are to be deplored, but on this record they do not constitute a sufficient ground for the dismissal of the complaint.

John Burns, the insurance association investigator, testified that he and two other investigators concluded their inquiries in this matter in the fall of 1961, but he did not know when the entire investigation was completed. The complaint was filed on January 29, 1965, and was

served on the respondent in February 1965. The hearings were not completed until March 4, 1971. The hearing division, or Division Three of the Committee on Grievances, filed its findings on June 14, 1973. The full Committee on Grievances, after amending the findings and recommendation of Division Three, referred the proceeding to the Board of Managers of the Chicago Bar Association. After considering objections of the respondent and amending findings and recommendations the Board filed its report with this court on January 7, 1974.

Many of the delays, especially in the hearing period between January 29, 1965, and March 4, 1971, are explainable by the respondent's action. No less than 37 continuances of the hearings were allowed on the respondent's motion. There were numerous other motions by him. For example, he was granted two extensions of time to file his answer. Also, he filed objections to a motion for issuance of a *subpoena duces tecum,* filed a motion to strike the complaint's interrogatories and later obtained an extension of time to answer the interrogatories.

No explanation is offered by the *amicus curiae* as to the reasons for the hearing division's not filing its report until June 14, 1973, other than to note that the record contained 2,264 pages.

There is no prejudice to the respondent shown by the record here and there is no charge of specific prejudice made because of delays in the bringing of the proceeding or in the proceeding. As has been stated, the delays in substantial part were caused by the respondent's own action. There is no statute of limitations applicable in a disciplinary proceeding such as this, and we will not refuse to entertain charges simply because of the passage of some period of time. *In re Anderson,* 370 Ill. 515; *People ex rel. Healy v. Hooper,* 218 Ill. 313.

Considering all the circumstances, the argument of the respondent that the complaint should be dismissed and he should be discharged because of delays cannot be accept-

ed.

The defendant's conduct as shown by the record here was completely reprehensible. The sanction recommended by the Board of Managers is certainly not excessive, and we adopt it.

Judgment suspending the respondent from the practice of law for three years is entered.

*Respondent suspended.*

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.

MR. JUSTICE KLUCZYNSKI, dissenting:

I cannot agree that the evidence requires the sanction imposed by the majority. The evidence pertaining to the solicitation charges is not clear and convincing.

At the outset it should be noted that not one of respondent's clients expressed dissatisfaction with the services rendered by him, and all apparently admitted going to see him voluntarily. These individuals were ferreted out by a multitude of insurance investigators identifying themselves only as agents of the Chicago Bar Association. The investigation lasted several months.

John Burns, one of the investigators, testified that he worked for the American Insurance Association, which consisted of 200 insurance companies. Exchanges of information were also made with the Allstate and State Farm insurance companies. The investigation was paid for by the insurance association. Each investigator was issued an identification card indicating that the investigation of the closed cases was authorized by the Chicago Bar Association. These credentials were subsequently returned to the supervising agent of the insurance association. As the majority notes, the insurance association report pertaining to respondent was completed in 1961; yet the complaint against him, initially consisting of 16 counts and involving 30 former clients sought out by the insurance investigators, was not filed until 1965. These charges were

eventually reduced to seven counts because of evidentiary insufficiency, and the number of clients who testified was similarly lessened.

In regard to the charges of solicitation and procurement, the majority characterizes the incriminating evidence against respondent as mostly circumstantial. Only in two of the five cases in which solicitation was charged was there any attempt to identify the individual as either the respondent (count VII) or respondent's acquaintance (count VIII).

In count VII the client (Frazen) said she was approached by respondent, yet she gave an inaccurate description of him and admitted her memory was uncertain. In count VIII the client (Nehrke) identified a young college student as the person who recommended respondent, but the party, who was identified, refuted the matter. Nehrke also appears to have identified another person who visited him the evening of the accident, but a stipulation was made that this person was attending an Eastern law school at the time the solicitation purportedly occurred. Nehrke admitted that he knew he would be making a false insurance claim.

The other three charges involve unidentified individuals who approached the clients. Respondent disputed any knowledge of solicitation in these matters. In count X, the client (Frey) said he bribed the investigating police officer in order to avoid being taken to the police station because he did not possess a driver's license at the time of the accident. Frey represented that he signed a retainer agreement given him by the unknown party who came to his house and that he saw this agreement on respondent's desk when he later visited his office. However, Frey said that respondent requested that he sign another retainer agreement.

The evidence related to solicitation lacks the clear and convincing nature necessary to justify the majority's order of suspension. *In re Krasner,* 32 Ill.2d 121, does not

persuade. There the evidence showed an identified individual was paid $20,000 for "referring" about 75 personal injury cases to the attorney. The proof in that case of solicitation was far greater than that adduced against respondent.

The charges pertaining to the accounting are also somewhat contradicted. For example, the majority concludes that Lancaster (count I) received only $1,085 in settlement of his claim. *Amicus* suggests that the proper amount would have been $1,491.66. The abstract indicates that Lancaster admitted receiving about $1,500 as a result of the case.

It appears that more accurate accounting methods should have been utilized by respondent, but it should be reiterated that his clients expressed satisfaction with his services. Moreover, even though there may be some confusion as to the actual amounts paid and when payment was made in a limited number of cases, I believe that the confusing circumstances present a mitigating factor in determination of the sanction.

Even if the evidence were to be considered adversely to respondent, prior decisions tend to establish that the majority's sanction is excessive. This court has recognized that a lengthy suspension envisions severe consequences to a lawyer's career. (*In re Donaghy,* 402 Ill. 120, 123-24.) In the previously mentioned case of *In re Krasner* the facts of wrongdoing were far more aggravated than any which might have been demonstrated in the present case. Krasner was suspended for one year. In the case of *In re Damisch,* 38 Ill.2d 195, the misconduct could be described as qualitatively similar to that demonstrated in this case and the respondent was not suspended. Mitigating factors were established in *Damisch* that were akin to those presented on behalf of the 51-year-old respondent in this case. I would therefore favor a reduction of the sanction imposed to one more in keeping with our decisions in *Krasner* and *Damisch.* A reduction would be commensurate with the

public's protection and would still maintain the dignity of the legal profession.

MR. JUSTICE GOLDENHERSH joins in this dissent.